A. MARGARET SCHARMAN, APPELLEE, v. CONRAD A. SCHARMAN ET AL., APPELLANTS.

FILED OCTOBER 17, 1893.   No. 5093.

1. **Land Contracts:** ASSIGNMENT AS SECURITY: LIEN OF ASSIGNEE. A contract for lands, absolutely and formally assigned to another in writing, but designed as a security for a debt, is

but a mortgage, and when the debt is paid the lien of the assignee will cease. *Lipp v. South Omaha Land Syndicate*, 24 Neb., 692, followed.

2. Possession of land is notice to all the world, not only of the possession itself, but of the right, title, and interest, whatever it may be, of the possessor. *Uhl v. May*, 5 Neb., 157, followed.

3. To sustain an estoppel because of the omission to speak there must be both the specific opportunity and the apparent duty to speak. The party maintaining silence must have known that some one was relying thereon, and was either acting, or about to act, as he would not have done had the truth been told. *Viele v. Judson*, 82 N. Y., 32, approved.

APPEAL from the district court of Lincoln county. Heard below before CHURCH, J.

*Fawcett, Churchill & Sturdevant*, for appellants:

Even if there was not a *bona fide* sale from the plaintiff to the defendant Scharman of the lands described in the land contracts in controversy, still the plaintiff, by her conduct in clothing the defendant Scharman with the *indicia* of ownership of the lands in controversy, and in permitting him to hold himself out to the world as the owner of the lands, and thus gaining a credit in the commercial world, and particularly with the defendants Rector & Wilhelmy Company, which he would not otherwise have had, and the defendants Rector & Wilhelmy Company having relied upon the truthfulness of his claim of ownership and given credit on the strength of the same, the plaintiff is now estopped to assert any claim, right, title, or ownership to the lands in controversy as against the defendants Rector & Wilhelmy Company. (*Root v. French*, 13 Wend. [N. Y.], 570; *Saltus v. Everett*, 20 Wend. [N. Y.], 267; *Selser v. Brock*, 3 O. St., 308; *Resor v. Ohio & M. R. R. Co.*, 17 O. St., 140; *Combes v. Chandler*, 33 O. St., 183; *Anderson v. Armstead*, 69 Ill., 452; *Forbes v. McCoy*, 24 Neb., 703; *Blais v. Wait*, 69 N. Y., 113; *Gillespie v. Sawyer*, 15 Neb., 541; *Dinsmore v. Stimbert*, 12 Neb., 437; *Putman v. Sul-*

Scharman v. Scharman.

*livan*, 4 Mass., 45; *Roy v. McPherson*, 11 Neb., 199; *Hansen v. Berthelson*, 19 Neb., 433; *Bartlett v. Cheesbrough*, 23 Neb., 767; *Fisher v. Herron*, 22 Neb., 183; Herman, Estoppel, pp. 1063, 1069, 1099, 1100.)

The plaintiff is estopped, by the terms and covenants of her assignment, from alleging or proving that there was no consideration paid for the assignment by her to her son Conrad. (Secs. 50, 53, ch. 73, Comp. Stats.; *Dailey v. Kinsler*, 31 Neb., 340; 1 Perry, Trusts, sec. 162; *Wait v. Day*, 4 Den. [N. Y.], 439; *Blodgett v. Hildreth*, 103 Mass., 486; *Randall v. Phillips*, 3 Mason [U. S.], 388; *Allison v. Kurtz*, 2 Watts [Pa.], 185; *Graves v. Graves*, 29 N. H., 129; *Philbrook v. Delano*, 29 Me., 410; *Groff v. Roher*, 35 Md., 333; *Hogan v. Jaques*, 19 N. J. Eq., 123; *Farington v. Barr*, 36 N. H., 86; *Walker v. Locke*, 5 Cush. [Mass.], 90; *Bragg v. Geddes*, 93 Ill., 39; *McDonald v. Stow*, 109 Ill., 44; *Whiting v. Gould*, 2 Wis., 552*; *Jackson v. Cleveland*, 15 Mich., 94; *Van Der Volgen v. Yates*, 5 Selden [N. Y.], 219; 2 Herman, Estoppel, sec. 642; 2 Devlin, Deeds, secs. 834, 921; *Van Rensselaer v. Kearney*, 11 How. [U. S.], 297; *Bank of United States v. Housman*, 6 Paige Ch. [N. Y.], 535; *Squire v. Harder*, 1 Paige Ch. [N. Y.], 493; *Smith v. Williams*, 44 Mich., 240.)

*T. Fulton Gantt, contra:*

The assignment was intended as security, and if it were as absolute on its face as a warranty deed, it might be shown by parol that it was intended as security only. (*McHugh v. Smiley*, 17 Neb., 622; *Eiseman v. Gallagher*, 24 Neb., 81; *Thompson v. Thompson*, 30 Neb., 489; *Turner v. McDonald*, 9 Am. St. Rep. [Cal.], 189; *Raynor v. Drew*, 72 Cal., 307; *Helm v. Boyd*, 124 Ill., 370; *Robinsons v. Lincoln Savings Bank*, 85 Tenn., 365; *McMillan & Son v. Jewett*, 85 Ala., 476; *Morris v. Nixon*, 1 How. [U. S.], 126; *Russell v. Southard*, 12 How. [U. S.], 154; *Edrington v. Harper*, 3 J. J. Marshall [Ky.], 355;

*Jenkins v. Eldredge*, 3 Story [U. S.], 293; *Taylor v. Luther*, 2 Sumner [U. S.], 228; *Newman v. Edwards*, 22 Neb., 248; *Conway v. Alexander*, 7 Cranch [U. S.], 238; *Sprigg v. Bank of Mount Pleasant*, 14 Pet. [U.S.], 201*; *Babcock v. Wyman*, 19 How. [U. S.], 299; *Case v. McCabe*, 35 Mich., 100; *Flagg v. Mann*, 2 Sumner [U. S.], 533; *Dunman v. Coleman*, 59 Tex., 199; *Fisk v. Stewart*, 24 Minn., 97; *Anthony v. Anthony*, 23 Ark.. 479; *Moore v. Lackey*, 53 Miss., 91; *Carpenter v. Black Hawk Gold Mining Co.*, 65 N. Y., 43; *Jackson v. Parkhurst*, 4 Wend. [N. Y.], 369; *Jolly v. Single*, 16 Wis., 308; *Griffin v. Griffin*, 18 N. J. Eq., 104; *McNamara v. Culver*, 22 Kan., 661; *Davis v. Stonestreet*, 4 Ind., 101.)

One who buys an equitable title takes it subject to all prior equities, is put upon inquiry and takes his chances. An attaching creditor has no greater rights. (*Hibbard v. Weil*, 5 Neb., 45; *Mansfield v. Gregory*, 8 Neb., 433; *Westheimer v. Reed*, 15 Neb., 664; Drake, Attachment, 223; *Linnell v. Battey*, 2 Chicago L. J., n. s. [R. I.], 315.)

Defendants made no claims, as to reliances upon the lands, in plaintiff's presence. Plaintiff knew nothing of such claims, had no opportunity to speak, and is not estopped by her silence. (Bispham, Prin. of Eq., 352, 355; 1 Greenleaf, Evidence, sec. 202, note 2; *Holdane v. Trustees of the Village of Cold Spring*, 21 N. Y., 474; *Mayenborg v. Haynes*, 50 N. Y., 675.)

Rector & Wilhelmy Company are strangers to the assignment, and cannot take advantage of the statute of frauds as an estoppel. (*Eiseley v. Malchow*, 9 Neb., 180; *McCormick v. Drummett*, 9 Neb., 389; *Rickards v. Cunningham*, 10 Neb., 420; *Kemp v. Small*, 32 Neb., 318; High, Injunctions, sec. 251; *Treadwell v. Payne*, 15 Cal., 496; *Walrath v. Redfield*, 18 N. Y., 457; *Pope v. O'Hara*, 48 N. Y., 446.)

*William Neville*, also for appellee.

Ragan, C.

A. Margaret Scharman sued Conrad A. Scharman, Rector & Wilhelmy Company, and D. A. Baker, sheriff of Lincoln county, Nebraska, in the district court of that county, and in her petition alleged that on the 12th day of June, 1889, she was the owner of certain Union Pacific land contracts, calling for three quarter sections of land in Lincoln county, Nebraska; some of the lands represented by these contracts she had purchased from the Union Pacific Railway company direct, and others she had purchased from purchasers from the Union Pacific Railway Company; that on the 12th day of June, 1889, she borrowed of the North Platte National Bank $550, and gave a note therefor, signed by her husband and her son, Conrad A. Scharman, and that on said date, for the purpose of securing the payment of said note to said bank, she made an absolute formal assignment, in writing, of all of said land contracts to her son, Conrad A. Scharman, and that he deposited said contracts with said bank to secure the payment of said note; that the assignment of said land contracts to her said son was for the purpose only of securing the payment of the note given to said bank, and not for the purpose or with the intent of placing the title or ownership of said lands, or any of them, in her said son, Conrad A. Scharman; and that he agreed, when she repaid him the money borrowed, that he would reassign to her said contracts; that during the year 1889 her son, Conrad A. Scharman, was a member of the copartnership of Stewart & Scharman, a firm doing a hardware business in North Platte, Nebraska; that she had paid all the money borrowed by her and for which she had pledged or assigned said land contracts, and that her son, Conrad A. Scharman, had neglected and refused to reassign to her said contracts; that the defendants Rector & Wilhelmy Company had brought a suit against the copartnership of Stewart & Scharman, and had caused

an attachment to be levied upon all the lands represented by said contracts, claiming said lands were the individual property of said Conrad A. Scharman; that the lands were in fact hers, and hers only; that Conrad A. Scharman had no interest in them, nor any lien upon them; that the proceedings in attachment were a cloud upon the title to the same, and she prayed that Conrad A. Scharman should be decreed to reassign to her said land contracts; that Rector & Wilhelmy Company should be perpetually enjoined from proceeding any further with the attachments levied on said land; that the title to the same might be quieted and confirmed in her.

Conrad A. Scharman did not answer the petition. The sheriff answered, justifying under the attachment. Rector & Wilhelmy Company defended on two grounds:

1. That the assignment of the land contracts by Mrs. Scharman to her son, Conrad A. Scharman, was not intended as security, but made in pursuance of an actual sale of the lands represented by them to Conrad.

2. That Rector & Wilhelmy Company, by reason of the assignment of said land contracts, being in the name of Conrad A. Scharman, were led to believe him the owner of the lands, and, relying on such assignment, they sold the copartnership of which he was a member merchandise on credit, and that Mrs. Scharman was estopped from now claiming the ownership of the lands as against them.

The court found all the issues in favor of Mrs. Scharman, and decreed that Conrad A. Scharman should reassign to her the land contracts; quieted and confirmed the title to the lands in her, and perpetually enjoined their sale under the attachment levied thereon by Rector & Wilhelmy Company, and from this decree the latter parties appeal.

The pleadings, and appellants' argument as well, present two questions, which we notice in their order.

Did Mrs. Scharman assign the land contracts to her son Conrad as security for the payment of money, or in pur-

suance of an absolute sale of the lands to him? The court found that the contracts were assigned by Mrs. Scharman to her son Conrad to secure the payment of $500 in money loaned by Conrad to his mother June 12, 1889. The evidence supports this finding. Any other finding would be unsupported by the testimony. This $500 was borrowed from the North Platte National Bank. Conrad and his father gave the bank their note for it, and Conrad deposited with the bank, to secure the payment of the note, these land contracts assigned to him by his mother on that day, June 12, 1889, for that very purpose, and Mrs. Scharman received this money. When this note matured Conrad borrowed the amount of it and interest, $561, from the First National Bank of North Platte, and with this money paid off the first note, and deposited the land contracts with the First National Bank to secure the $561 note. Finally, Mrs. Scharman and her husband mortgaged their homestead, and with the money borrowed, paid off the $561 note. During all this time Mrs. Scharman remained in possession of these lands, on which she had horses and cattle, and other property. She kept up the payments to the Union Pacific Railway Company, the owners of the legal title, and there is no evidence in the record to sustain the contention of appellants that Mrs. Scharman sold or intended to sell these lands to her son on June 12, 1889, or at any other time. It is true the contracts were absolutely and formally assigned to the son, but it was competent to show by parol that they were intended as security in the nature of a mortgage for money loaned. (*McHugh v. Smiley*, 17 Neb., 620; *Eiseman v. Gallagher*, 24 Neb., 79; *Lipp v. South Omaha Land Syndicate*, 24 Neb., 692; *Tower v. Fetz*, 26 Neb., 707; *Thompson v. Thompson*, 30 Neb., 489; *Kemp v. Small*, 32 Neb., 318.)

We come now to the second question in this case, put by the able and ingenious counsel for appellants in their brief as follows: "Even if there was not a *bona fide* sale from the

plaintiff to the defendant Scharman of the lands described in the land contracts in controversy, still the plaintiffs by her conduct in clothing the defendant Scharman with the *indicia* of ownership of the lands in controversy, and in permitting him to hold himself out to the world as the owner of the lands, and thus gaining a credit in the commercial world, and particularly with the defendants Rector & Wilhelmy Company, which he would not otherwise have had, and the defendants Rector & Wilhelmy Company having relied upon the truthfulness of this claim of ownership and given credit upon the strength of the same, the plaintiff is now estopped to assert any claim, right, title, or ownership to the lands in controversy as against the defendants Rector & Wilhelmy Company."

What conduct of Mrs. Scharman is it claimed by appellants estops her? Is it the assignment and delivery to Conrad of the land contracts as security? She did this, but she retained possession of the lands. This was, of itself, notice to all the world of her equities. See *Uhl v. May*, 5 Neb., 157, where this court say: "Possession of land is notice to all the world, not only of the possession itself, but of the right, title, and interest, whatever it may be, of the possessor." To the same effect see *Filley v. Duncan*, 1 Neb., 134; *Lipp v. Hunt*, 25 Neb., 91; *Smith v. Gibson*, 25 Neb., 511; *Hansen v. Berthelsen*, 19 Neb., 433.

The legal title to the lands was in the Union Pacific Railway Company, and the assigned contracts were not recorded in the office of the register of deeds of Lincoln county. Appellants had then no notice from that quarter that Conrad held the assignment. Appellants argue that they gave Conrad credit by reason of his having in his name the assignment of these land contracts. The evidence, however, of appellants' own witnesses refutes this contention. Neither appellants, nor any of their agents, ever knew that Conrad held the assignment until after he had become indebted to appellants, and had failed in business.

Scharman v. Scharman.

Harberg, appellants' traveling salesman, says he was an intimate friend of Conrad Scharman; that Conrad went into business March 1, 1889, and that appellants began from that time to sell him goods on credit; and that prior to March 1, 1889, he visited the Scharman ranch—Mrs. Scharman's home—in company with Conrad and some others; that at that time " he, Conrad, represented to me that he was interested in these as part owner; that it gave him better credit with the house—it would with me, at least. He represented that he had property. If he had nothing, of course his credit did not amount to anything. He spoke of the lands a number of times; just referred to them, and what they would be worth in the course of time. I visited North Platte about every three weeks; remember the circumstance of Mrs. Scharman's going east." (Mrs. Scharman went east to New Jersey on June 12, 1889, and remained about four months.) He had a conversation with Conrad Scharman after his mother had gone east and Conrad told him : " he told me that his mother had gone east, and had left for good, and that he was the owner of the land; that he paid her one thousand dollars, and the land was now his." He said further, he believed the statements, and communicated them to Rector & Wilhelmy Company, and that the statements gave him better credit; that after that statement he issued him a larger amount of credit than he did before; that " he pointed out to me the land where the section lines ran. He made a motion with his hand ; I didn't know how far out it extended." He further testified on cross-examination as follows:

Q. If he represented to you prior to March, 1889, that he owned a part interest out there in these lands, and he, as a matter of fact, did not get any assignment of them from anybody until long after that time, you were deceived by him, were you not?

A. Certainly; yes, sir.

Q. Mrs. Scharman did not tell you that he owned any of these lands?

A. No, sir.

Q. Nor any part of them?

A. No, sir.

Q. Did you make any investigation to see if he owned part of the ranch?

A. No, sir.

Q. You took his word?

A. Yes, sir; I took his word for it.

Q. You had perfect confidence in him, did you?

A. Yes, sir; I took his word for it.

Q. When you went out there to the ranch you went up to the building at the homestead?

A. Yes, sir.

Q. Mrs. Scharman lived there, did she?

A. Yes, sir.

Q. You were in the house where she was, were you not?

A. Yes, sir.

Q. Conrad told you that he was part owner out there?

A. Yes, sir.

Q. And you did not ask her whether that was true or not?

A. No, sir.

Q. Still, you gave him credit on the strength of that?

A. Yes, sir.

Q. You sold him goods on the strength of that?

A. Yes, sir; partly on the strength of that, and partly because—

Q. And partly because he was a good friend of yours, and you thought he was a good business man?

A. Partly that, and other reasons.

Q. And partly because you knew he owned some other property?

A. He had a home here; yes, sir.

Q. Did not you and he ever buy any together?

A. Yes, sir; that was very small, though.

Q. In partnership?

A. Yes, sir.

Q. You were quite friendly, were you not?

A. Yes, sir; we were.

Q. This land that you have testified that you and Con. owned together, what land was that?

A. That was a five-acre tract just west of Grand Island, probably three or four miles from the post-office.

The substance of this evidence is that Conrad Scharman took his friend Harberg out to his, Conrad's, mother's home. Conrad, on the way, says: "I am part owner here." Mrs. Scharman was in possession. The legal title was in the Union Pacific Railway Company. This was some months before Mrs. Scharman assigned the contracts to Scharman. Mrs. Scharman was not present when Conrad pointed out to Harberg the land of which he claimed he was part owner. No inquiries were made of Mrs. Scharman by Harberg as to Conrad's interest in these lands.

It appears, then, that appellants credited Conrad, relying on the latter's claim of part ownership of his mother's lands. She, however, said nothing to appellants on the subject. She did nothing from which appellants might infer that Conrad's story was true. She kept silent when Conrad made his claim, because she did not hear it made. The fact that Conrad while his mother was east, during the months of June, July, August, and September, 1889, claimed ownership of all the lands, did not change Mrs. Scharman's relation to appellants. At no part of this time was Conrad in possession of the lands. Mrs. Scharman did not know that Conrad was asserting such a claim, nor did she learn, after her return, that he had done so. She knew he was in business, but did not know anything about his financial condition, nor did she know appellants were crediting him, or the firm of which he was a member. Her silence did not operate as a fraud upon, nor did it mislead, appellants. She did not have the opportunity to speak, and

8

being ignorant of the claims of her son, it was not her
duty to speak.    While she was silent, she did not know
that appellants were relying upon her silence, nor that
they were relying upon the claims of ownership asserted
by her son ; nor did she know that they were giving him
credit, which they would not have given him had they
known the truth.    Mrs. Scharman is neither estopped to
claim these lands, so far as the evidence shows, either from
her silence, or from any act of hers.    During her absence
in the east, the contracts, though duly and formally assigned
to Conrad, were not in his possession or under his control,
but were in the bank as security only for the money on
which Mrs. Scharman was traveling.    Appellants made no
inquiries about the assignment for the very good reason
that they did not know of its existence.    If appellants
extended credit to Conrad after June, 1889, relying on his
ownership of these lands, they did it on the strength of the
statements made to Harberg by Conrad prior to March,
1889.    How, then, can it be said that the evidence in this
record shows that Mrs. Scharman clothed Conrad with the
apparent ownership of her lands, and held him out to the
commercial world as owner, and that he thereby obtained
credit?

Counsel for appellants cite Herman on Estoppel, page
1099, where it is said : "In order to create an estoppel by
which an owner is prevented from asserting title to and is
deprived of his property by the act of a third person with-
out his assent, the owner must have clothed the person as-
suming to dispose of the property with the apparent title
to, or authority to, dispose of it.    The person alleging the
estoppel must have acted, and parted with value, upon the
faith of such apparent ownership, or authority, so that he
will be the loser, if the appearances to which he trusted are
not real."    But appellants' case is not within the rule here
laid down.    There is no evidence in this case that appel-
lants gave Conrad Scharman credit upon the faith of his

apparent ownership of his mother's lands.  When appellants gave Conrad credit he was not in possession of any part of these lands.  He did not have the legal title, or a deed to any of them, and appellants did not know he held the assignment of the contracts.

Counsel also cite *Anderson v. Armstead*, 69 Ill., 452, where it is said: "The law is familiar, that where the owner of property holds out another, or allows him to appear as the owner of, or as having full power of disposition over, the property, and innocent parties are thus led into dealing with such apparent owner or person having the apparent power of disposition, they will be protected.  Their rights in such cases do not depend upon the actual title or authority of the party with whom they have directly dealt, but they are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power he caused or allowed to appear to be vested in the party upon the faith of whose title or power they dealt."  We approve of the doctrine of that case; but after repeated searches of the record we have been unable to find any evidence that Mrs. Scharman held out her son to appellants as the owner of her lands, or allowed him to appear to appellants as owner of, or having any control or power of disposition over, her lands; and we are unable to find any evidence that appellants in giving the son credit, did so relying on any apparent title, control, or ownership of these lands by him.

Appellants also cite *Hansen v. Berthelsen*, 19 Neb., 433, but that case is not in point here.  In that case Hansen made to Berthelsen, without consideration, an absolute warranty deed of his farm, and himself placed the deed on record.  While Berthelsen held this title she exercised acts of ownership over the land.  She conveyed a part of it to a school district and accepted from the school district a deed for another part of it.  Both these deeds were recorded.  Love, in good faith, for a valuable consideration,

and relying on Berthelsen's title as disclosed by the records, purchased this land.   This court held that Love was entitled to a lien on the land for the amount he paid for it, the court saying: "The rule in equity is that where one of two innocent parties must suffer by the wrong of a third, he, who, by his negligence or undue confidence, has been the means by which the other has been deceived, must bear the loss."   Rector & Wilhelmy Company do not come within this rule.   They did not innocently give credit to Conrad A. Scharman and they were not induced to give him credit by any negligence of Mrs. Scharman, nor by any undue confidence which she placed in Conrad.   The decree of the district court is right and the same is in all things

AFFIRMED.