ELIZABETH WRIGHT ET AL., APPELLEES, V. EARL BARCLAY
ET AL., APPELLANTS.

36 N. W. 2d 645

Filed April 1, 1949. No. 32510.

*James F. Begley, A. L. Tidd, Max Kier,* and *J. T. Stanton,* for appellants.

*Emmet L. Murphy* and *John N. Baldwin,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Elizabeth Wright and Roland Pruess commenced this action in the district court for Cass County against Earl Barclay, E. P. Stewart, and Nyle C. Stewart. The purpose of the action is to obtain the specific performance of a provision in a lease which plaintiffs claim gives them an option to purchase certain real property. From a decree in favor of the plaintiffs the defendants have appealed.

For the purpose of this opinion the parties will be referred to as they appeared in the lower court or by their proper names.

While the record discloses considerable conflict in the evidence on immaterial matters it shows little, if any,

dispute on matters material to the issues. The parties have either admitted by their pleadings or the evidence establishes the following: That Barclay was the owner of the west one-half of Lot 9, Block 29, in the city of Plattsmouth, Cass County, Nebraska; that this property is located in the main business part of the city; that on it is a two-story building with a full basement; that the ground floor is used for business and, at the time herein involved, was being operated as a restaurant; and that the second floor consists of seven rooms and was being used as living quarters by the plaintiffs and their families.

On October 17, 1945, Barclay entered into a written lease on these premises for a period of one year. This lease was with Ben A. and Ida M. Hull and extended from November 1, 1945, to November 1, 1946. The consideration therefor was $840 payable at the rate of $70 a month. The monthly payments were payable on the first of each month, in advance, at the Plattsmouth State Bank located in Plattsmouth. This lease contained no provision for either an extension or renewal.

This lease contained the following provision: "Should party of the first part wish to sell this property during the term of this lease he agrees to give parties of the second part the option of purchase at the highest price offered."

If this option was in force and effect when Barclay sold these premises to the Stewarts then it was sufficiently definite to be enforced. See, Harper v. Runner, 85 Neb. 343, 123 N. W. 313, and Anderson v. Stewart, 149 Neb. 660, 32 N. W. 2d 140.

Subsequent to the execution of the lease the plaintiffs purchased the restaurant business being operated therein from the Hulls and they assigned their interest in the lease to the plaintiffs by endorsement thereon as of February 14, 1946. This assignment was agreed to and approved by Barclay by written endorsement thereon dated February 15, 1946. Pursuant thereto the plaintiffs went into possession of the building and have, ever since,

operated the restaurant and lived in the rooms on the second floor. It would appear they have conducted it as a family business and have been very successful in the operation thereof.

This assignment, approved by Barclay, gave the assignees all of the lessees' rights in and to the lease, including the option. See, Myers v. Stone & Son, 128 Iowa 10, 102 N. W. 507, 111 Am. S. R. 180, and Berrien County Fruit Exchange v. Pallas, 314 Mich. 66, 22 N. W. 2d 74.

Sometime prior to June 1946, the plaintiffs had leases prepared for these premises covering the period from November 1, 1946, to November 1, 1947. They provided for the same rental terms. These leases are dated March 23, 1946, but were not offered to Barclay until sometime in June of that year. In addition to the foregoing provisions they also provided that the lessee should have the right to extend the lease for an additional period of one year, to November 1, 1948, and in addition thereto it contained an option giving the lessee the right to purchase the property during the term thereof, or the extension, if lessor should wish to sell. The option to purchase was phrased in the same language as in the original lease.

This proposed lease was never executed nor was any other lease entered into. The plaintiffs, after the expiration of the written lease which had been assigned to them, continued to hold over and pay rent to Barclay. This they continued to do from November 1, 1946, up to and including April 1, 1947.

On March 31, 1947, without consulting the plaintiffs or notifying either of them, Barclay entered into a contract for the sale of these premises to A. J. Trilety of Plattsmouth. Trilety was, at that time, a real estate agent and purchasing the property for the defendants E. P. and Nyle C. Stewart. At that time Barclay received $1,000 of the purchase price, which was $5,000. Thereafter, on April 11, 1947, Barclay received the balance of the purchase price and conveyed the property to the Stewarts.

As a result of the sale this litigation developed because

plaintiffs contend they had an option to purchase the premises by reason of their lease and by this action seek to enforce it.

Much of the evidence in the record relates itself to the conduct of the parties after the sale. Such conduct is immaterial for the plaintiffs were in actual possession of the property and such possession would be notice to any purchaser of whatever rights they had. See, Scharman v. Scharman, 38 Neb. 39, 56 N. W. 704, and Dengler v. Fowler, 94 Neb. 621, 143 N. W. 944. However, if they had no option rights at the time the Stewarts, through Trilety, bought the premises from Barclay they acquired none by the conduct of the parties subsequent thereto.

Since there was no agreement in the lease for an extension or any agreement entered into by the parties for the renewal thereof, the first question for our consideration is what are the rights of the appellees, as tenants holding over their term, as they relate to the option provision in the written lease?

We have said: " * * * in this jurisdiction, by legislative action (Comp. St. 1929, sec. 49-101), we have adopted the common law of England as governing the relation of landlord and tenant." Roberts v. Rogers, 129 Neb. 298, 261 N. W. 354. Section 49-101, Comp. St. 1929, is now section 49-101, R. S. 1943.

Options should be strictly construed and not extended beyond the express provisions thereof. If the parties desire to extend an option in a lease beyond the term thereof they can easily use language expressly so providing but the law should not do so for them.

We have said: "The option is part of the lease, and every provision in that instrument is supported by the identical consideration that vitalized all other parts thereof. Hall v. Center, 40 Cal. 63; Frank v. Stratford-Handcock, 13 Wyo. 37, 77 Pac. 134." Harper v. Runner, *supra.* However, in Mauzy v. Elliott, 146 Neb. 865, 22 N. W. 2d 142, we said: "The latter was not an essential covenant of the 1942 lease as such but an independent option there-

in, * * *." See Carter v. Frakes, 303 Ky. 244, 197 S. W. 2d 436. The provision in the written lease herein involved is not an essential covenant thereof but an independent option therein for the term of the lease.

"When a tenant with the consent of his landlord, express or implied, holds over his term, the law presumes a continuation of the original tenancy for another like term and upon the same conditions." Bradley v. Slater, 50 Neb. 682, 70 N. W. 258.

"* * * when a term stipulated in a written lease for a year has ended, and the landlord recognizes him as tenant thereafter by receiving rent or in any other way, showing that both parties regard the relation of landlord and tenant as still continuing, and there is no further agreement as to the terms of the tenancy, defendant is to be considered as holding for another term upon the same conditions as specified in the original lease." Krull v. Rose, 88 Neb. 655, 130 N. W. 272.

We think an option contained in a lease to purchase the property and so destroy the tenancy is not one of the terms of the tenancy itself. While it may be made a provision of a lease and incorporated therein it is, nevertheless, a provision outside of the terms which regulate the relations between the parties as landlord and tenant. It is therefore not one of the terms of the original tenancy which will be incorporated into the tenancy created by a tenant holding over after the expiration of the lease. See, subdivision 3 of Annotation, 37 A. L. R. 1246; Andreula v. Slovak Gymnastic Union Sokol Assembly, 140 N. J. Eq. 171, 53 A. 2d 191; Napper v. Rice, 127 W. Va. 157, 32 S. E. 2d 41; In re Leeds & Batley Breweries Limited, 2 Ch. D. (1920) 548.

We recognize there are holdings contrary to this view. See, subdivision 3 of Annotation, 163 A. L. R. 712, and Gressitt v. Anderson, 187 Md. 586, 51 A. 2d 159. But options should be strictly construed and not extended beyond the express provision thereof. If the parties to a lease desire that an option contained therein should

extend beyond the term thereof, to a tenant holding over, they can easily use apt language to express that purpose but the law should not, by implication, enlarge the legal rights of a tenant holding over beyond the terms and conditions necessary to continue the landlord tenant relationship.

In view of what we have said it is apparent that the option to purchase, contained in the written lease dated October 17, 1945, terminated on November 1, 1946, and that the appellees had no rights thereunder as tenants holding over the term fixed therein. Such being true the trial court was in error in granting appellees specific performance thereof.

The decree of the trial court is therefore vacated and set aside and the cause remanded with directions to enter judgment in favor of the appellants and dismiss appellees' cause of action. Costs are taxed to appellees.

REVERSED AND REMANDED WITH DIRECTIONS.