J. PAUL MCINTOSH ET AL., APPELLANTS, V. OTTO J. BORCHERS ET AL., APPELLEES.

241 N. W. 2d 534

Filed May 5, 1976. No. 40382.

William E. Holland of Kutak, Rock, Cohen, Campbell, Garfinkle & Woodward, for appellants.

Vincent J. Kirby of Kirby, Duggan & McConnell, for appellees.

Heard before WHITE, C. J., McCOWN, and BRODKEY, JJ., and RICHLING, District Judge.

McCOWN, J.

This action seeks specific performance of an agreement to sell real estate, together with a temporary injunction to prevent farming it pending determination of the issues. In the alternative the plaintiffs sought restitution and damages. The District Court denied the injunction, granted partial summary judgment to the extent of denying specific performance, and granted plaintiffs time to file an amended petition as to all other matters except the validity of the agreement.

The defendants, Otto J. Borchers and Edna W. Borchers, owned a quarter section of land in Madison County, Nebraska. They had lived on the property and farmed it since 1941. After an accident to Mr. Borchers in 1970, the Borchers decided that he was unable to continue active farming. In January of 1974, the plaintiffs, J. Paul McIntosh and Eleanor McIntosh, made a written offer to purchase the quarter section for $48,000 and gave the Borchers a check for $5,000 downpayment. The offer provided for an additional payment of $3,000 on October 1, 1974. The balance was to draw 7 percent simple interest. The Borchers decided that they wanted to continue to live on the farm and did not want to pay rent and they took the $5,000 check back to McIntosh. McIntosh then agreed to let the Borchers live on the property rent free, and the following language was added to the offer: "J. Paul McIntosh agrees to pay principal and interest in 10 equal installments beginning Jan. 1, 1975. Buyer further agrees to allow Sellers to live on & control the building site until

contract is paid in full or Sellers move from the house. Seller agrees to keep buildings insured & maintain buildings & site in satisfactory manner, and to pay taxes on buildings & site until possession of buildings & site is given to Buyers. Buyer agrees not to charge rent to Sellers while Sellers live in house." The Borchers accepted the offer with that addition on February 2, 1974, and both signed the acceptance but it was not acknowledged by either of them.

McIntosh took possession of the farmland, had some trees removed, leveled some of the land, spread fertilizer, installed a center pivot irrigation system, sunk a well, and put in a natural gas pipeline to operate the pump and irrigation system. He cultivated the land in 1974, and raised a corn crop. The Borchers continued to live in the house and maintained possession and control of the residence and buildings on the building site.

The $3,000 payment due on October 1, 1974, was paid October 12th. On January 2, 1975, Borchers went to McIntosh to see about the payment due on January 1st. McIntosh wanted to draw up a more formal agreement as they had discussed previously. The two men went to a realtor's office and gave the information to one of the men there. McIntosh left the January 1, 1975, payment with the broker to hold until the new contract was drawn. Apparently no new contract was ever drawn.

Borchers waited about 2 weeks and then attempted to contact McIntosh. He was advised that McIntosh was out of town and would not be back until early February. The Borchers then consulted an attorney who advised them that the agreement was invalid because it involved their homestead and had not been acknowledged. The Borchers then made a contract with defendants Freudenburg and Reeves to sell them the quarter section, excepting the 12 acres where the residence and buildings were located. The purchase price was $48,000. The agreement was signed and acknowl-

edged on February 12, 1975, and the new purchasers took possession of the farmland and planted corn in the spring of 1975. The plaintiffs filed this action on May 9, 1975.

The quarter section of land which was described in the McIntosh offer was the homestead of the Borchers within the statutory definitions at the time they signed the acceptance. The critical issue here is whether that purchase offer accepted by the Borchers on February 2, 1974, was valid and enforceable by specific performance in the absence of acknowledgment.

Section 40-101, R. R. S. 1943, defines a homestead as "* * * the dwelling house in which the claimant resides, its appurtenances, and the land on which the same is situated, not exceeding one hundred and sixty acres of land * * *." Section 40-104, R. R. S. 1943, provides: "The homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife * * *."

This court has consistently held that the statute applies to contracts for sale as well as to conveyances or encumbrances, and that a contract to convey the homestead of a married person is invalid and unenforceable unless voluntarily executed and acknowledged by both husband and wife as required by section 40-104, R. R. S. 1943. See Struempler v. Peterson, 190 Neb. 133, 206 N. W. 2d 629.

The plaintiffs contend that the Borchers intended to and did abandon their homestead rights insofar as the farmland was concerned and retained the homestead rights in the building site only. While an abandonment of a homestead interest removes the restrictions of section 40-104, R. R. S. 1943, we have consistently held that once established, a homestead is not abandoned until there is both an intent to abandon and actual abandonment. See Struempler v. Peterson, *supra*.

In this case the evidence establishes that even if there

was an intent to abandon, there was no actual abandonment of the farmland, at least until plaintiffs were given possession sometime after the execution of the critical document. Unless it can be said that the document itself constituted an abandonment, the Borchers' quarter section constituted their homestead at the time of the execution of the agreement here. The only land described in the agreement was the "NE ¼ of Section 17-23-2, Madison County, State of Nebr." The agreement does not reveal any basis for allocation of the purchase price to anything except the entire tract. Plaintiffs argue that the building site can properly be excluded and separated from the description as the homestead reserved by the Borchers. The provisions of the agreement "allow Sellers to live on & control the building site until contract is paid in full or Sellers move from the house." Under its terms the contract is payable in full in less than 10 years and the purchasers would then be entitled to a deed to the entire quarter section, including the building site. The agreement here does not have any legal description which can be applied to the building site alone, nor even an approximate number of acres.

Even if it be assumed that the contract included both homestead and nonhomestead property, the difficulties here are not resolved. In Struempler v. Peterson, *supra*, this court said: "Where a contract for the purchase and sale of real estate includes both homestead and nonhomestead property but is not executed and acknowledged as required by section 40-104, R. R. S. 1943, specific performance may be obtained as to the nonhomestead land with an abatement of the total purchase price, where the contract under its provisions is clearly severable as to the nonhomestead property.

"Where such a contract is not severable as between homestead and nonhomestead property, this court will not ordinarily attempt to make a new contract for the parties; nor impose new conditions; nor will it require

specific performance of a contract which does not contain the substance of the agreement made."

Plaintiffs finally contend that defendants, by their conduct, are estopped from asserting their statutory homestead rights as against a claim for specific performance. The cases already referred to answer this contention. While the Borchers' conduct may be insufficient to constitute estoppel as against a claim for specific performance, those actions may well be material and sufficient in connection with the alternative claim for restitution and damages. Those issues, however, have been reserved by the District Court and may be appropriately considered upon remand to the District Court.

The judgment of the District Court in denying the temporary injunction and granting partial summary judgment by denying specific performance is affirmed, and the cause is remanded to the District Court for further proceedings.

AFFIRMED. REMANDED FOR FURTHER PROCEEDINGS.

BOSLAUGH, J., participating on briefs.