O'NEILL PRODUCTION CREDIT
ASSOCIATION, APPELLEE, V.
LARRY D. MITCHELL ET AL., APPELLANTS.

307 N.W.2d 115

Filed June 19, 1981. No. 43398.

William W. Griffin for appellants.

Edward E. Hannon for appellee.

Heard before KRIVOSHA, C.J., WHITE, and HASTINGS, JJ., and VAN PELT and CAPORALE, District Judges.

CAPORALE, District Judge.

The defendants-appellants, Larry D. and JoAnn Mitchell, husband and wife, and Larry's parents, Adrian L. and Eva L. Mitchell, husband and wife, are land contract vendees. The plaintiff-appellee, O'Neill Production Credit Association (Association), sought foreclosure of a lien claimed to have arisen by virtue of an assignment by the Mitchells of their interests in the land contract to the Association. The trial court found that a lien had been created and decreed foreclosure. For the reasons which follow, we affirm in part and reverse in part.

This is an action in equity; it is therefore the duty of the Supreme Court to retry the issues of fact involved upon the evidence in the record and, upon such trial de novo, to reach an independent conclusion. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Sullivan v. Hoffman*, 207 Neb. 166, 296 N.W.2d 707 (1980); *Parry v. State Farm Mut. Auto Ins. Co.*, 191 Neb. 628, 216 N.W.2d 875 (1974).

The evidence is not in conflict on the material issues. On March 9, 1967, the Mitchells, jointly and as tenants in common, entered into a contract with William J. and Elizabeth M. Meusch, husband and wife. Under the terms of that contract the Mitchells were to purchase certain land from the Meusches. Title was to be conveyed to the Mitchells when the extended installment payments due the Meusches were completed. A portion of the land which is the subject of the contract is the homestead of Larry and JoAnn.

The Association had lent money to Larry and JoAnn

in the past, and on January 22, 1975, took a promissory note from them, jointly and severally, in the amount of $325,000. On that same day, the Association presented an Assignment of Purchase Agreement (Assignment) to Larry. The Assignment undertook to "transfer, assign and set over" to the Association the Mitchells' title and interest in and to the land contract until an unspecified and unidentified "indebtedness, whether now owning or hereafter incurred, shall be satisfied and paid."

On February 11, 1975, Larry took the Assignment to a notary public. The notary certified that all four Mitchells had appeared before him and acknowledged the "instrument" to be their voluntary act and deed. JoAnn, Adrian, and Eva never appeared before the notary, nor were their signatures affixed to the Assignment when the notary signed his certificate. JoAnn did testify at trial that she had voluntarily and freely signed the Assignment.

Thereafter, between June 14, 1975, and June 21, 1976, the Association lent another $73,887.88 to Larry and an additional $19,160 to Larry and JoAnn. No money was ever lent by the Association to Adrian or Eva.

Appellants' assignments of error may be summarized as claiming that the trial court erred in determining that the Assignment was supported by valid consideration and in finding that JoAnn Mitchell was estopped to deny the validity of her acknowledgment with respect to the younger Mitchells' homestead interest.

It is clear that the assignment of the executory land contract between the Meusches and the Mitchells given to secure the debt in question is to be treated as a mortgage. *Grandjean v. Beyl*, 78 Neb. 349, 110 N.W. 1108 (1907); *Burrows v. Hovland*, 40 Neb. 464, 58 N.W. 947 (1894); *Scharman v. Scharman*, 38 Neb. 39, 56 N.W. 704 (1893). We have also held that a preexisting debt is a valuable and sufficient consideration for a mortgage given to secure that debt. *Longfellow v. Barnard*, 58 Neb. 612, 79 N.W. 255 (1899), *aff'd on rehearing*, 59 Neb.

455, 81 N.W. 307 (1899); *Morrill v. Skinner*, 57 Neb. 164, 77 N.W. 375 (1898); *Steen v. Stretch*, 50 Neb. 572, 70 N.W. 48 (1897). It is true that each of those cases is factually distinguishable from the one at bar. *Longfellow* involved the assignment by the mortgagee of a fraudulent mortgage to secure a creditor of the mortgagor. In *Morrill*, the property subject to the husband's mortgage was conveyed to the mortgagor's wife in a divorce settlement wherein the wife agreed to assume and pay the husband's mortgage and further gave her own separate mortgage and note. *Steen* presented a situation wherein the maker of a note later executed a mortgage to secure its payment to the mortgagee who had sold the note to another and agreed to forbear collection efforts. Nonetheless, the cases establish that a preexisting debt owed by the mortgagor to the mortgagee is valid consideration for a mortgage given to secure that debt. We have found no Nebraska case, and counsel have cited us none, which clearly holds that a real estate mortgage given to secure the preexisting debt of another is supported by valid consideration. However, it is generally held that the consideration required to support a mortgage need not flow from the mortgagee to the mortgagor; it is sufficient that the mortgagee parted with consideration. 55 Am. Jur. 2d *Mortgages* § 100 (1971); 59 C.J.S. *Mortgages* § 88 (1949). See, also, *Leach v. Treber*, 164 Neb. 419, 82 N.W.2d 544 (1957). It is likewise generally held that the consideration necessary to support a suretyship obligation need not pass directly to the surety; a consideration moving to the principal alone will suffice. 74 Am. Jur. 2d *Suretyship* § 14 (1974). Thus, a real estate mortgage given to secure the preexisting debt of another is supported by valuable and sufficient consideration. Consequently, the Assignment creates a valid lien as to the interests of Adrian and Eva with respect to the debt owed by Larry and JoAnn to the Association on February 11, 1975.

The matter of the loans made by the Association to Larry and JoAnn after February 11, 1975, is a different

question. The difficulty with those subsequent loans rests in the ambiguity of the Assignment. There can be no question as to what debt was being secured at the time the Assignment was executed, as only the one debt represented by Larry and JoAnn's joint note existed. However, as to "indebtedness . . . hereafter incurred," the Assignment identifies neither the nature of the future debt nor the future debtor. Although mortgage clauses which undertake to secure subsequent debts are not favored in equity and are carefully scrutinized and strictly construed, they will, in the absence of other legal prohibition, be enforced to the extent they are determined to have been within the intent of the parties. *Holiday Inns v. Sucher-Schaefer,* 77 Mich. App. 658, 259 N.W.2d 179 (1977); *Freese Leasing v. Union Trust & Sav. Bank,* 253 N.W.2d 921 (Iowa 1977); *First v. Byrne,* 238 Iowa 712, 28 N.W.2d 509 (1947); 59 C.J.S. *Mortgages* § 178 (1949). Here it cannot be said that the so-called dragnet clause contained in the Assignment clearly and unequivocally obligated Adrian and Eva to secure future indebtedness incurred by Larry and JoAnn, or by anyone else. The Assignment therefore created no lien against the interests of Adrian and Eva with respect to any money advanced by the Association after February 11, 1975. The foregoing conclusion makes it unnecessary for us to determine the applicability and effect, if any, of Neb. Rev. Stat. § 76-238.01 (Reissue 1976), which deals, among other things, with future advances on mortgaged real estate.

We now turn to the homestead interest. It is well established that a mortgage on real estate, other than as to the homestead, executed and delivered by the mortgagor is valid between the parties, even though it was not lawfully acknowledged. *Prudential Ins. Co. v. Holliday,* 191 Neb. 144, 214 N.W.2d 273 (1974); *Mitzner v. Putnam,* 186 Neb. 664, 185 N.W.2d 665 (1971). The question under the circumstances of this case is whether JoAnn is estopped from asserting the invalidity of her acknowledgment. We hold that she is not. Neb. Rev.

Stat. § 40-104 (Reissue 1978) provides, with certain exceptions not material here, that the homestead of a married person cannot be encumbered unless the instrument is executed and acknowledged by both husband and wife. It has long been the law of this state that where the statutory requirements of signature and acknowledgment by both husband and wife to encumbrance of a homestead are wanting, they cannot be supplied by estoppel. *Davis v. Thomas,* 66 Neb. 26, 92 N.W. 187 (1902); *Betts v. Sims,* 25 Neb. 166, 41 N.W. 117 (1888). See, also, *McIntosh v. Borchers,* 196 Neb. 109, 241 N.W.2d 534 (1976), *appeal after remand,* 201 Neb. 35, 266 N.W.2d 200 (1978). We see no reason to depart from that rule. An interest in the homestead simply will not pass nor be created unless the documents for that purpose are signed and acknowledged by both husband and wife. Thus, there can be no lien on that portion of the land contract interest which relates to the homestead of Larry and JoAnn.

Moreover, only $19,160 of the $93,047.88 lent by the Association after February 11, 1975, is JoAnn's debt; she did not join in the execution of the notes signed by Larry for the balance.

Accordingly, we affirm the decree of the trial court as to Adrian and Eva except as to the indebtedness incurred by Larry or Larry and JoAnn after February 11, 1975, in regard to which we reverse. We affirm as to Larry and JoAnn except as to the homestead interest, in regard to which we reverse. We also reverse as to JoAnn with regard to that portion of the indebtedness incurred after February 11, 1975, in which she did not join.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.