NORWEST BANK NEBRASKA, NATIONAL ASSOCIATION, A NATIONAL BANKING ASSOCIATION, APPELLEE, V. RICHARD G. KIZZIER AND YVONNE A. KIZZIER, HUSBAND AND WIFE, ET AL., APPELLEES, KIZZIER REALTY & INVESTMENT CO., INC., A NEBRASKA CORPORATION, APPELLANT.

446 N.W.2d 204

Filed September 22, 1989.    No. 87-252.

Robert G. Simmons, Jr., of Simmons, Raymond, Olsen, Ediger, Selzer & Ballew, P.C., for appellant.

Patrick J. Nelson, of Jacobsen, Orr, Nelson & Wright, P.C., for appellee Norwest.

HASTINGS, C.J., CAPORALE, and GRANT, JJ., and BURKHARD and HANNON, D. JJ.

BURKHARD, D.J.

On January 6, 1986, Norwest Bank Nebraska, National Association (Norwest), plaintiff-appellee, brought an action to foreclose two trust deeds signed by defendants-appellees Richard G. and Yvonne A. Kizzier. The trust deeds secured promissory notes signed by Richard and Yvonne and defendant-appellee Roy' Kizzier. Appellant, Kizzier Realty & Investment Co., Inc. (Kizzier Realty), joined as a defendant, held a mortgage covering the same property, which secured a note from Richard and Yvonne Kizzier, as personal guarantors, and Kizzier Chevrolet Company of Kearney. Several other

defendants who might claim an interest in the property by virtue of leases, mortgages, and judgments were also named in the foreclosure action.

The property covered by the trust deeds and mortgages is described as "[t]he East 192.0 feet of the West 337.0 feet of the South 391.2 feet of the Southwest $1/4$ of the Southeast $1/4$ of Section 34, Township 9 North, Range 16, West of the 6th P.M., Buffalo County, Nebraska, except the South 33.0 feet thereof." Richard and Yvonne Kizzier were record owners of the property.

A bench trial was held on December 10, 1986, after which the court determined the priority of the various liens and the amounts due and owing on each lien. In its order, the court found Norwest had a valid first lien by virtue of a note dated May 21, 1984, and a trust deed dated March 18, 1982, in the principal sum of $132,491.51, plus accrued interest of $30,420.53, for a total sum of $162,912.04, with interest in the principal sum at the rate of 14.5 percent per year from and after December 10, 1986, or $52.63 per day. The court found Kizzier Realty had a valid second lien upon the property by virtue of its note and mortgage dated December 23, 1982, in the principal sum of $500,000, plus accrued interest of $278,193.40, for a total sum of $778,193.40, with interest on the principal sum at the rate of 14 percent per year from and after December 10, 1986, or $191.78 per day. The court found Dwayne L. Kizzier held a valid third lien upon the property in the amount of $73,577.65, with interest at the rate of 18 percent per year, or $28.36 per day, and Kizzier Chevrolet Company, Inc., of Scottsbluff, Nebraska, held a valid fourth lien upon the property in the amount of $481,352.97, with interest at the rate of 9.5 percent per year, or $104.11 per day.

Kizzier Realty filed a motion for new trial, which was denied. Kizzier Realty perfected its appeal to this court. We affirm.

The history herein goes back to September 14, 1981, when Richard Kizzier, hereinafter called Richard, individually and as partner, and Yvonne Kizzier, hereinafter called Yvonne, individually, signed a note to First Savings Company of Kearney (First Savings) in the principal amount of $149,940, payable in five monthly payments of $3,678.99 beginning

October 14, 1981, and a final balloon payment of $151,969.22 due March 13, 1982. To secure the note Richard and Yvonne executed a trust deed on September 14, 1981, on the subject premises, with First Savings as beneficiary and Jeffrey H. Orr, attorney at law, as the trustee. A deed of reconveyance signed by the trustee on March 22, 1982, showed that the note had been paid and reconveyed the subject premises.

On March 18, 1982, Richard, individually and as a partner; Yvonne, individually; and Roy Kizzier, hereinafter called Roy, as partner, signed a note (No. 10080) to First Savings in the principal amount of $148,558.01, payable in five monthly payments of $3,542.78 beginning April 17, 1982, and a final balloon payment of $147,957.92 due September 14, 1982. To secure the note, Richard and Yvonne executed a trust deed on March 18, 1982, on the subject premises, with First Savings as beneficiary and Orr as trustee. The March 18 note was not paid when due.

On August 27, 1982, Richard, individually and as partner; Roy, individually and as partner; and Yvonne, individually, signed a note (No. 10137) to First Savings in the principal amount of $144,702.07, payable in five monthly payments of $3,557.43 beginning September 26, 1982, and a final balloon payment of $138,523.50 due February 23, 1983. The March 18, 1982, note was marked "RENEWED New Loan No. 10137 Date 8-27-82." The August 27 note shows that there is a lien on the subject premises evidenced by a trust deed "bearing even date herewith," although the note, in reference to the trust deed, refers to its being "[f]iled in Buffalo Co. 3-18-82 microfilm roll 82 page 1223," which is the correct recording information for the aforementioned trust deed executed by Richard and Yvonne on March 18. The August 27 note was also not paid when due.

On March 23, 1983, Richard, individually and as general partner; Yvonne, individually; and Roy, individually and as general partner, signed a note (No. 10207) to First Savings in the principal amount of $137,152.93, payable in five monthly payments of $3,713.60 beginning April 22, 1983, and a final balloon payment of $127,470.91 due September 22, 1983. The August 27 note was marked "RENEWED New Loan No.

10207 Date 3-23-83." The March 23 note also shows that there is a lien on the subject premises evidenced by a trust deed "bearing even date herewith," although the note, in reference to the trust deed, also refers to its being "[f]iled in Buffalo Co. 3-18-82 microfilm roll 82 page 1223." The March 23 note was also not paid when due, and further states on its face as follows: "The purpose of this loan is: rewrite loan #10137."

On May 26, 1983, Richard, Yvonne, and Roy, each individually, signed a note (No. 10222) to First Savings in the principal amount of $139,895.99, this note being payable in 11 monthly payments of $1,975 beginning June 24, 1983, and a final balloon payment of $138,219.56 due May 24, 1984. The March 23, 1983, note was marked "RENEWED New Loan No. 10222 Date 5-26-83." As on the August 27 and March 23 notes, the May 26, 1983, note also shows that there is a lien on the subject premises evidenced by a trust deed "bearing even date herewith," although the note, in reference to the trust deed, also refers to its being "[f]iled in Buffalo County 3-18-82 microfilm roll 82 page 1223." This note of May 26 was also not paid when due, and states on its face as follows: "The purpose of this loan is: rewrite #10207."

Finally, in the chronology of events, on May 21, 1984, Richard, Yvonne, and Roy, each individually, signed a note to First National Bank of Grand Island (No. 10316) in the principal amount of $137,777.55, payable in 11 monthly payments of $2,200 beginning July 5, 1984, and a final balloon payment of $134,721.84 due June 5, 1985. The May 26, 1983, note was marked "RENEWED New Loan No. 10316 Date 5-21-84." The May 21, 1984, note shows a mortgage on the subject premises "bearing even date herewith," and, in fact, on May 21, 1984, Richard and Yvonne did execute a trust deed on the subject premises, with "First Savings Company of Kearney n/k/a First National Bank of Grand Island" as beneficiary and Pat Nelson, attorney at law, as trustee. This note was also not paid when due, and states on its face as follows: "The purpose of this loan is: Rewrite 10222."

On May 1, 1984, the First National Bank of Grand Island merged with First Savings Company of Kearney, with the bank being the surviving corporation. On June 1, 1984, the title of the

First National Bank of Grand Island was changed to Norwest Bank Grand Island, National Association. On October 1, 1985, the said Norwest Bank Grand Island, National Association, merged into Norwest Bank Omaha, National Association, under the charter of Norwest Bank Omaha, National Association, and title of "Norwest Bank Nebraska, National Association," the plaintiff herein.

Appellant, Kizzier Realty, holds a mortgage to the same property signed by Richard and Yvonne. The mortgage was dated December 23, 1982, and filed January 4, 1983, in the Buffalo County register of deeds' office. The mortgage secures a note signed by Richard, as president of Kizzier Chevrolet Co. of Kearney, Inc., and Richard and Yvonne, as personal guarantors. The note, payable on demand, is in the principal sum of $500,000, with interest at 14 percent per annum, payable monthly. At the time of trial this note remained unpaid.

Plaintiff's petition generally asked for an order granting it possession of the subject premises and an accounting of the amounts due from defendants Richard, Yvonne, and Roy Kizzier on the note of May 21, 1984, and the trust deeds of March 18, 1982, and May 21, 1984. Kizzier Realty asked that the plaintiff's petition be dismissed and, on its cross-petition, that its lien be decreed to be a first lien upon the subject premises.

This is an action in equity. It is therefore the duty of the Supreme Court to retry the issues of fact involved upon the evidence in the record and, upon such trial de novo, to reach an independent conclusion. *O'Neill Production Credit Assn. v. Mitchell*, 209 Neb. 206, 307 N.W.2d 115 (1981).

In its first assignment of error, Kizzier Realty claims that the trial court erred in not determining that the plaintiff's installment loan was illegal in exceeding the statutory lending limit to one borrower. The second assignment of error states that the court erred in permitting the use of the judicial process and courts to collect (as against an individual party) the fruits of an illegal act. These two assignments of error shall be considered together.

Kizzier Realty claims that the notes of March 18, 1982, August 27, 1982, March 23, 1983, and May 26, 1983, exceeded

the loan authority of First Savings; that the charging and collecting of a prepaid finance charge on the note of May 26, 1983, was illegal; that there were illegal prepaid finance charges on the notes of March 18, 1982, and August 27, 1983; and that there were excessive finance charges on the note of March 18, 1982.

Assuming, but only for the sake of argument, that Kizzier Realty's claims of illegality have merit, the following facts are clear. Kizzier Realty was not a party to any of the allegedly illegal notes; Richard and Yvonne, in their answer to plaintiff's petition, made no defense that any of the notes were illegal; Roy, who also signed the notes in question, did not file an answer or other responsive pleading to plaintiff's petition and therefore raised no defense of illegality; none of the alleged illegal notes were sued upon by the plaintiff in this action, since they all have zero balances; and the only note sued upon by the plaintiff is the note of May 21, 1984, to First National Bank of Grand Island, and it is not claimed to be illegal in any way. There is therefore no merit to Kizzier Realty's first two assignments of error.

In its third assignment of error, Kizzier Realty states that the trial court erred in not finding the March 18, 1982, note paid and the security extinguished. The fourth assignment of error states that the court erred in not finding that the 1984 transaction was a new transaction and that the 1982 obligation had been extinguished (as a new transaction or novation) and therefore offered no security for the 1984 transaction. The sixth assignment of error alleges that the trial court erred in not finding that the security of Kizzier Realty was prior to that of the plaintiff. These assignments of error are interrelated and therefore are considered together.

The evidence is clear that the four notes (March 18, 1982, August 27, 1982, March 23, 1983, and May 26, 1983) were all renewed, and were not, as Kizzier Realty contends, paid.

Patricia A. Cook was the manager at First Savings from January 1, 1981, to October 18, 1983. Her testimony by way of deposition certainly indicates that the parties intended that the notes would be renewed. For example, credit life insurance on the March 18, 1982, note was for a term of 72 months. At about

the time the balloon payment was due on the March 18 note, Cook talked to Richard about restructuring said note, and those discussions culminated in the note of August 27, 1982. The balloon payment on the August 27 note was renegotiated with the Kizziers, and the restructuring was reflected in the note of March 23, 1983. One of the Kizziers (presumably Richard) came to Cook and said he was unable to make the monthly payments of $3,713.60 called for in the March 23 note, but felt he could make payments of $1,975. The note of May 26, 1983, calling for monthly payments of $1,975 was then executed.

James R. Clark, vice president and manager of Norwest in Kearney, testified in his deposition that he talked to Richard about the balloon payment that was due on May 24, 1984, in connection with the May 26, 1983, note. This discussion took place before the balloon payment was due. Clark testified that Richard agreed to renewing the May 26 note "at the terms that we had," and, based upon the conversations with Richard, the note of May 21, 1984, was prepared and executed.

A case very much in point is *Kehr v. Blomenkamp*, 171 Neb. 304, 106 N.W.2d 179 (1960), in which the plaintiff sued to foreclose a mortgage on certain real estate given on February 16, 1955, by defendants Blomenkamp to the plaintiff to secure a promissory note of even date therewith in the amount of $15,000. A promissory note in the amount of $8,000 was given by defendants Blomenkamp to the plaintiff as of June 1, 1956. The $8,000 was the balance due on the $15,000 note as of June 1, 1956. J.H. Melville Lumber Company was made a party defendant by reason of the fact that the Blomenkamps had given it a mortgage on the same real estate on November 14, 1956. This mortgage was assigned to Melville Investment Company, which became a substitute defendant. Universal Surety Company was a party defendant because the Blomenkamps had given it a mortgage on the same real estate on December 3, 1956. Defendant Universal Surety denied the validity of the mortgage which the plaintiff sought to foreclose, alleging that the note for $8,000 was a new obligation and transaction which was not secured by the mortgage. Universal Surety also denied the validity of the mortgage of Melville Investment and sought a foreclosure of its own mortgage as a

first lien on the real estate. Melville Investment contended that the lien of its mortgage had priority over the mortgage of Universal Surety. In finding the mortgage of the plaintiff to be a first lien, the mortgage of Melville Investment to be a second lien, and the mortgage of Universal Surety to be a third lien, the trial court found that the mortgage given to the plaintiff on February 16, 1955, to secure the $15,000 note remained as security for the $8,000 note given as of June 1, 1956, and as such was a first lien on the real estate. The effect of the trial court's finding was that the $8,000 note was a renewal note for the balance due on the $15,000 note "in consequence of which the obligation and security of the mortgage remained in full force and effect." *Id.* at 307, 106 N.W.2d at 181.

In affirming the trial court, this court, in *Kehr*, stated as follows:

> The principles of law on which this question must be determined were stated early in the decisions of this state. There has been no departure from the early statements. In Davis v. Thomas, 66 Neb. 26, 92 N.W. 187, it was said: "Nothing but payment or a formal release will discharge a mortgage. The existence of a lien securing the original loan, furnishes a presumption that any renewal was not a discharge of the original, where the renewal is not secured."

> This principle was approved in Auld v. Walker, 107 Neb. 676, 186 N.W. 1008. The following was also said in this case: "The taking of a new note for an existing note is a renewal of the old indebtedness, and not a payment of the debt, unless there is a specific agreement between the parties that the new note shall extinguish the original debt."

> In Berwyn State Bank v. Swanson, 111 Neb. 141, 196 N.W. 125, these principles were approved in the following words: "But, whatever the rule may be in other jurisdictions, it is well settled in this state that—'The taking of a new note for an existing note is a renewal of the old indebtedness, and not a payment of the debt, unless there is a specific agreement between the parties that the new note shall extinguish the original debt.' " [Citations

omitted.]

By what was said in these cases it is clear that the specific agreement that a new note will extinguish the original debt must be one between the parties to the transaction.

In the record before this court there is no evidence either direct or circumstantial in proof of a specific agreement between the plaintiff and the defendants Blomenkamp that the note for $8,000 should or would extinguish the original debt.

This lack of evidence renders applicable and controlling in this case the unvaried rule that the existence of a lien securing an original loan furnishes a presumption that any renewal was not a discharge of the original where the renewal is not secured, the effect of which is to say that the contention of the appellant that the mortgage was released is presumptively without merit.

*Kehr v. Blomenkamp*, 171 Neb. 304, 307-08, 106 N.W.2d 179, 181 (1960). See, also, *First West Side Bank v. Herzog*, 204 Neb. 356, 361, 282 N.W.2d 38, 41 (1979), which not only fortifies *Kehr*, but further holds: "In order for a novation to occur, the existing liability must be completely extinguished and a new one substituted in its place."

In the instant case, there is no evidence to indicate an intent on the part of the plaintiff and Richard, Yvonne, and Roy to extinguish the debts evidenced by the four notes (March 18, 1982, August 27, 1982, March 23, 1983, and May 26, 1983) and substitute a new agreement in each case in place of the old. The intent was clearly to renew the notes, not extinguish them, and the trust deed of March 18, 1982, was therefore not released by the subsequent notes. As regards the trust deed of May 21, 1984, it is mere surplusage. It follows that there is no merit to Kizzier Realty's third, fourth, and sixth assignments of error.

Kizzier Realty's fifth assignment of error is that the trial court erred in giving priority for more than was loaned. This assignment is somewhat unclear. In any event, there was unrefuted evidence from Gary L. Ott, vice president of special loan administration for the plaintiff, that the principal balance owing on the May 21, 1984, note as of December 10, 1986, was

$132,491.51 and total accrued interest as of that date was $30,420.53, or a total of $162,912.04, with interest at $52.63 per day. These are the same figures that are in the district court's judgment. The fifth assignment of error is also without merit.

The judgment of the district court is affirmed.

AFFIRMED.