Eric M. Zornes, as Trustee of the Eric M. Zornes
Revocable Trust, appellant and cross-appellee,
v. Julia A. Zornes, as Trustee of the
Julia A. Zornes Revocable Trust,
appellee and cross-appellant.

___ N.W.2d ___

Filed December 18, 2015.    No. S-14-775.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Summary Judgment.** When reasonable minds can differ as to whether an inference can be drawn, summary judgment should not be granted.

3. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

4. **Partition: Equity: Appeal and Error.** A partition action is an action in equity and is reviewable by an appellate court de novo on the record.

5. **Uniform Commercial Code: Negotiable Instruments.** Under the Uniform Commercial Code, when a note is payable to two or more persons not alternately, i.e., joined by "and" rather than "or," they may only enforce or receive payment jointly.

6. **Accord and Satisfaction.** To constitute an accord and satisfaction, there must be (1) a bona fide dispute between the parties, (2) substitute performance tendered in full satisfaction of the claim, and (3) acceptance of the tendered performance.

7. **Partition: Estates.** The purpose of a partition action is to divide a jointly owned interest in real property so that each owner may enjoy and possess in severalty.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Reversed and remanded for further proceedings.

James B. Luers and Krista M. Carlson, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellant.

Jane F. Langan Mach and Sheila A. Bentzen, of Rembolt Ludtke, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

Heavican, C.J.

## INTRODUCTION

In this conversion suit, Eric M. Zornes, as trustee for his revocable trust, appeals the district court's summary judgment in favor of his ex-wife, Julia A. Zornes, as trustee of her revocable trust. We also review the district court's partition of two promissory notes. We reverse, and remand for further proceedings.

## BACKGROUND

In 2006, Eric won a lottery with a group of coworkers who had pooled their money. With their new wealth, Eric and his wife, Julia, commenced a gifting plan to three family members: Julia's brothers, Andy Wolfe and Jason Wolfe, and Jason Reed, the husband of Eric's niece. To avoid taxes, these gifts were structured as loans with annual payment forgiveness. Each borrower made a promissory note for his loan, payable to Julia's and Eric's trusts jointly.

Andy's note was secured by a deed of trust for real property in Lincoln, Nebraska. Deciding to make a change, Andy sold his Lincoln property in July 2009 and purchased a new home with the sale proceeds. Julia had discussed the prospect of the sale with Eric and told him the new home would not cost Julia and Eric "any more or less money." In response, Eric told Julia she was "going to do what she was going to do."

Later that month, after the sale, Andy wired full payment on the note to Julia's individual savings account. Without informing Eric, Julia re-lent all but $22,154.66 of the proceeds to Andy's wife, Sara Whitney, for the purchase of the new home. Whitney made two notes for the loan, payable only to Julia's trust. Julia retained the surplus proceeds. There is some dispute as to whether Eric had knowledge of these transactions at that time.

A couple of weeks after Andy and Whitney paid the old note and made the new notes, Eric and Julia legally separated. In October 2009, Eric filed for divorce. During divorce settlement negotiations, Eric's attorney made reference several times to the promissory notes for Andy, Jason Wolfe, and Jason Reed. However, the final settlement agreement reached in August 2011 did not mention the promissory notes or the proceeds. Nothing in the record indicates the parties ever discussed the Whitney notes.

A year later, in August 2012, Julia's attorney sent a letter to Eric's attorney referencing "recent discussions" between them. The letter stated that Andy's note had been paid in full to Julia and that the proceeds were loaned to Whitney. In response, on October 19, one of Eric's attorneys sent a letter to Julia's attorney, demanding Eric's alleged share of the note proceeds.

Eric claims that he did not learn that Andy's house had been sold until March 2010. He further alleges he discovered sometime later, presumably around the time of the August 2012 letter, that Julia had retained the proceeds of the sale and lent money to Whitney. But Julia argues that Eric consented to her handling of the proceeds. Julia also asserts several affirmative defenses, including, as relevant to this appeal, accord and satisfaction.

Eric filed his complaint in this action on October 30, 2012, alleging Julia had converted the proceeds of Andy's note. Julia counterclaimed for partition of the Jason Wolfe and Jason Reed notes. The parties each filed motions for summary

judgment and motions for expenses, costs, and attorney fees. The district court granted Julia's motion for summary judgment. It found that even if Julia had converted the proceeds, the settlement agreement operated as an accord and satisfaction. The district court also ordered partition of the promissory notes for Jason Wolfe's and Jason Reed's loans by granting each party a one-half divided interest in proceeds from each. The district court denied both Julia's and Eric's motions for expenses, costs, and attorney fees.

Eric appeals, and Julia cross-appeals.

ASSIGNMENTS OF ERROR

Eric assigns, consolidated and reordered, that the lower court erred by (1) denying his motion for summary judgment on his conversion claim and (2) granting Julia's motion for summary judgment on the ground of accord and satisfaction.

In her cross-appeal, Julia assigns the lower court erred in (1) the method by which it partitioned the Jason Wolfe and Jason Reed notes and (2) denying her motion for expenses, costs, and attorney fees.

STANDARD OF REVIEW

[1-3] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1] When reasonable minds can differ as to whether an inference can be drawn, summary judgment should not be granted.[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that

---

[1] *DMK Biodiesel v. McCoy*, 290 Neb. 286, 859 N.W.2d 867 (2015).

[2] *Hughes v. School Dist. of Aurora*, 290 Neb. 47, 858 N.W.2d 590 (2015).

party the benefit of all reasonable inferences deducible from the evidence.[3]

[4] A partition action is an action in equity and is reviewable by an appellate court de novo on the record.[4]

## ANALYSIS

This case presents four primary issues. The first two issues are interrelated: whether the undisputed facts establish that Julia committed conversion and whether they also establish accord and satisfaction. We must next determine the proper method to partition two promissory notes. Finally, Julia asks us to review the district court's denial of expenses, costs, and fees. Because we find that there exist genuine issues of material fact as to both motions, as well as to the value of the notes, we reverse, and remand.

*Eric's Claim for Conversion.*

In his first assignment of error, Eric argues the undisputed facts show that Julia committed conversion. We disagree.

Section 3-420 of the Uniform Commercial Code (UCC) states that the common law of conversion applies to negotiable instruments and also creates a statutory cause of action when, in part, "a bank makes or obtains payment [on an] instrument for a person not entitled to enforce the instrument or receive payment."[5] When a provision of the UCC applies, a litigant cannot rely on common-law causes of action.[6]

[5] The parties assume that the common law applies to suits between copayees; however, we note that § 3-420 could be construed to apply here. Under the UCC, when a note is payable to two or more persons not alternately, i.e., joined by "and" rather than "or," they may only enforce or receive

---

[3] *Rent-A-Roofer v. Farm Bureau Prop. & Cas. Ins. Co.*, 291 Neb. 786, 869 N.W.2d 99 (2015).

[4] *Channer v. Cumming*, 270 Neb. 231, 699 N.W.2d 831 (2005).

[5] Neb. U.C.C. § 3-420(a) (Reissue 2001).

[6] *Mandolfo v. Mandolfo*, 281 Neb. 443, 796 N.W.2d 603 (2011).

payment jointly.[7] Andy's note was payable to both trusts not alternately. Therefore, Julia, alone, was not entitled to enforce the note, potentially bringing this case into the ambit of § 3-420.

But we note that the factual disputes discussed below would be material to a claim under either the UCC or common law. Therefore, our selection of conversion law in this case would not affect our decision and we need not determine which rule applies.

Julia argues she did not commit conversion because she had Eric's consent to collect and relend the proceeds. Reviewing the denial of Eric's motion for summary judgment, if a reasonable jury could find that Julia acted with Eric's consent, then the district court did not err.[8]

To prove consent, Julia argued three central facts. First, Julia presented evidence that starting in July 2009, Eric knew Andy was planning to sell his house, and that the proceeds would be used to purchase a new home. Next, Julia relies upon a conversation in which she informed Eric of these plans and told him the new home would not cost "any more or less money" than was already owed on Andy's note. Eric responded that Julia was "going to do what she was going to do." Finally, Julia presented e-mail messages between bank and title company representatives that could infer Eric knew about and consented to the wire transfer of proceeds to Julia's individual savings account.

Eric denies he was aware of the wire transfer and claims the conversation Julia relies upon is highly ambiguous. Eric argues that his apparent consent to Andy and Whitney's purchase of a new home for "any more or less money" hardly proves he consented to giving Julia his entire interest in the proceeds from Andy's note. Further, Julia admits that she never asked Eric's permission for the wire transfer and never informed him of the new notes to Whitney.

---

[7] Neb. U.C.C. § 3-110(d) and comment 4 (Reissue 2001).

[8] See *Hughes v. School Dist. of Aurora, supra* note 2.

Despite the weaknesses in Julia's defense as illustrated by Eric, a reasonable jury could find that Julia acted with Eric's consent. Thus, a genuine issue of material fact precludes Eric's motion for summary judgment and his first assignment of error is without merit.

*Julia's Defenses.*

In his second assignment of error, Eric argues Julia was not entitled to summary judgment on the theory that the settlement agreement constituted an accord and satisfaction. We agree.

[6] To constitute an accord and satisfaction, there must be (1) a bona fide dispute between the parties, (2) substitute performance tendered in full satisfaction of the claim, and (3) acceptance of the tendered performance.[9] Whether Eric should have known that Julia made concessions in the divorce settlement, intending them to satisfy Eric's claim for proceeds, is a question of fact.[10] A meeting of the minds is essential, and therefore, there is no accord and satisfaction if one party is not yet aware of the later-disputed matter.[11]

The district court found, first, that the parties had a bona fide dispute at the time of settlement concerning the disposition of Eric's half of the note proceeds. Second, the district court found that Julia had made concessions in settlement negotiations in order to reach an agreement and that the parties had done so in satisfaction of Eric's claim of right to the proceeds. Finally, the district court found that Eric had accepted the settlement agreement as substitute performance, which was evidenced by his hearing testimony.

Each of the district court's findings relies upon an inference that Eric knew about the proceeds. This inference would have been permissible had there been no reasonably credible evidence to the contrary. However, summary judgment

---

[9] *Simons v. Simons*, 261 Neb. 570, 624 N.W.2d 36 (2001).

[10] See *Peterson v. Kellner*, 245 Neb. 515, 513 N.W.2d 517 (1994).

[11] See *Mahler v. Bellis*, 231 Neb. 161, 435 N.W.2d 661 (1989).

proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute.[12]

In this case, there was a genuine issue of material fact as to whether Eric knew about the proceeds. There was evidence to support a conclusion that Eric was unaware of Julia's actions until after the settlement agreement was executed. For example, letters from Eric's divorce attorney during negotiations consistently listed the original loan to Andy as marital property, suggesting that Eric believed his trust still had an interest in the note to Andy and that the note had not yet been satisfied. There could be no meeting of the minds, and no agreement for substitute performance in satisfaction of that dispute, if Eric did not yet know that the note had been paid off.

Julia alternatively claims that the dispute was over whether the notes were marital property as opposed to gifts to the loan recipients. However, the record shows that while she considered the loans to be gifts, Julia also knew the parties could cease the gifting plan at any time. Thus, a finder of fact could reasonably determine there was no bona fide dispute as to the proper classification of the notes as marital property.

For these reasons, summary judgment on the ground of accord and satisfaction was improper.

Julia pleaded several additional defense theories before the district court. These included: failure to state a claim upon which relief can be granted, laches, estoppel, res judicata, collateral estoppel, waiver, and ratification. The district court did not pass upon any of these defenses. Julia raised the defenses of waiver and ratification in the argument section of her appellate brief. We find that summary judgment on these theories is precluded by the same genuine issues of material fact as pertain to accord and satisfaction. Further, we do not find that any of the other defenses Julia pleaded below warrant summary judgment in her favor.

---

[12] *O'Brien v. Bellevue Public Schools*, 289 Neb. 637, 856 N.W.2d 731 (2014).

Therefore, Julia was not entitled to summary judgment and Eric's second assignment of error has merit. We reverse, and remand for further proceedings.

*Partition of Remaining Notes.*

In Julia's first assignment of error on cross-appeal, she asserts the district court erred by partitioning the Jason Wolfe and Jason Reed notes in one-half interests of each to the parties.

[7] The purpose of a partition action is to divide a jointly owned interest in real property so that each owner may enjoy and possess in severalty.[13] This court has twice applied the law of partition to personal property, including one case involving promissory notes.[14]

Julia requests that this court grant her the entire Jason Wolfe note and grant the Jason Reed note to Eric. She argues that splitting each note as the district court did is legally ineffective, because the notes still require Julia and Eric to act jointly as holder under § 3-110.

Eric contends that the district court partitioned the notes properly. He claims that although the Jason Reed note has a greater face value, other factors render the Jason Wolfe note more valuable.

We find merit in both arguments. Because the district court did not order any assignments of interest when it partitioned the notes, it actually preserved joint management under § 3-110. However, if there truly are significant differences in value between the two notes, Julia's proposal might not be equitable.

Thus, upon remand, the parties shall assign their interests in the notes so that Julia retains complete interest in the Jason Wolfe note and Eric retains complete interest in the

---

[13] *Channer v. Cumming, supra* note 4.

[14] *Hoover v. Haller*, 146 Neb. 697, 21 N.W.2d 450 (1946); *Riley v. Whittier*, 100 Neb. 107, 158 N.W. 446 (1916).

Jason Reed note so that the parties can independently manage the notes made by their respective family members. We also direct the trial court to determine the values of each note, taking into consideration any relevant factors such as collateral and financing terms. The district court shall order partition with an equalization payment as necessary.

*Attorney Fees and Costs.*

In Julia's second assignment of error, she argues the district court should have granted her motion for expenses, costs, and attorney fees. The district court denied Julia's motion without explanation.

Julia claims that a provision of the Uniform Trust Code authorizes the court to award costs and fees, because this is "a judicial proceeding involving the administration of a trust."[15] Eric denies that the Uniform Trust Code applies. We note, however, that the applicability of this section is irrelevant, because the code merely grants courts discretion to award costs and fees. The record does not indicate the district court abused its discretion, particularly in light of our decision to remand the cause for further proceedings. Therefore, Julia's second assignment of error is without merit.

## CONCLUSION

We reverse the summary judgment and remand the cause for further proceedings not inconsistent with this opinion.

Reversed and remanded for
further proceedings.

Stacy, J., not participating.

---

[15] See Neb. Rev. Stat. § 30-3893 (Reissue 2008).