Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/10/2020 04:10 PM CDT

Joy Arnold, Personal Representative of the
Estate of Beverly Freiden, deceased, appellee, v.
Michael J. Walz, an individual, appellant,
and John Doe et al., appellees.

___ N.W.2d ___

Filed June 19, 2020.    No. S-19-619.

1. **Jurisdiction.** A question of jurisdiction is a question of law.
2. **Summary Judgment.** Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
3. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
4. **Equity: Quiet Title.** A quiet title action sounds in equity.
5. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
6. **Jurisdiction: Time: Notice: Appeal and Error.** Under Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2018), to vest an appellate court with jurisdiction, a party must timely file a notice of appeal.
7. **Judgments: Time: Notice: Appeal and Error.** Under Neb. Rev. Stat. § 25-1912(3) (Cum. Supp. 2018), filing a timely motion for a new trial or a timely motion to alter or amend a judgment terminates the time in

which a notice of appeal must be filed; instead, the 30-day period to appeal starts anew upon the entry of the order ruling upon the motion for a new trial or the motion to alter or amend a judgment.

8. **Pleadings: Judgments.** In some circumstances, an appellate court may treat a postjudgment motion under a different title as a motion to alter or amend a judgment, based on the actual relief it seeks, rather than the way it was titled by the movant.

9. **Pleadings: Judgments: Time.** A motion to reconsider may be treated as a motion to alter or amend under Neb. Rev. Stat. § 25-1329 (Reissue 2016) if it was filed no later than 10 days after the entry of judgment, and must seek substantive alteration of the judgment.

10. **Options to Buy or Sell: Real Estate: Words and Phrases.** An option to purchase real estate is a unilateral contract by which the owner of the property agrees with the holder of the option that he or she has the right to buy the property according to the terms and conditions of the option.

11. **Options to Buy or Sell: Real Estate.** Under an option to purchase real estate, the owner does not sell the land; nor does the owner at the time contract to sell. The owner does, however, agree that the person to whom the option is given shall have the right, at his or her election or option, to demand the conveyance in the manner specified.

12. **Options to Buy or Sell: Real Estate: Time.** An option to purchase real estate compels performance within the time limit specified or, if none is mentioned, then within a reasonable time.

13. **Options to Buy or Sell: Real Estate.** Options to buy or sell real estate should be strictly construed and not extended beyond their express provisions.

14. ____: ____. The exercise of an option to buy or sell real estate must be absolute, unambiguous, without condition or reservation, and in accordance with the offer made.

15. ____: ____. Where a real estate option contract specifies the required manner of acceptance, the holder must conform.

Appeal from the District Court for Douglas County: Marlon A. Polk, Judge. Affirmed.

James R. Place, of Place Law Office, for appellant.

Edward F. Pohren, of Smith, Slusky, Pohren & Rogers, L.L.P., for appellee Joy Arnold.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Michael J. Walz, the appellant, leased real property from Beverly Freiden, and the lease included an option to purchase the property at any time before the end date of the lease. During Walz' tenancy, Beverly Freiden died. Joy Arnold (Arnold), an appellee, and Jon Freiden were appointed copersonal representatives of her estate. Beverly Freiden's will provided that the property would remain in the estate, or if sold, the proceeds would be divided variously as indicated later in this opinion. After the term of Walz' initial option ended, Jon Freiden and Walz executed several lease modifications which purportedly extended Walz' option to buy the real property. Walz eventually claimed he owned the property. Arnold was reappointed personal representative of the estate and petitioned the district court for Douglas County seeking a declaratory judgment and to quiet title to the property in the estate. Arnold claimed that the property had not been distributed and remained in the estate, and she alleged that the purported lease modification contracts between Jon Freiden and Walz were improper and unenforceable. The district court granted Arnold's motion for summary judgment and quieted titled in favor of the estate. Walz appealed. We affirm.

## STATEMENT OF FACTS

Beverly Freiden died on December 8, 2012. In the subsequent related probate proceedings in the county court for Douglas County, Arnold and Jon Freiden were appointed copersonal representatives of the estate. Beverly Freiden's last will and testament stated, inter alia, that her real property, an unimproved lot located at the southwest corner of 18th and Jackson Streets in Omaha, Nebraska,

> may either be sold or retained by my personal representatives as they shall determine, and upon sale, whenever it occurs, my son, Jon Freiden, shall receive the first $25,000 from the sale and the remainder of the net sale

proceeds shall be paid over to my grandson, Bart Arnold for his care; provided however, if I am not the owner of said real estate at the time of my death, then I give, devise and bequeath from my estate to my son, Jon Freiden, the sum of $25,000.00 and I give, devise and bequeath the reminder of the net sale proceeds received when the property was sold to my grandson, Bart Arnold for his care.

Arnold and Jon Freiden, as copersonal representatives, did not sell the property. They filed an informal closing by verified statement on December 31, 2013, which stated, consistent with Neb. Rev. Stat. § 30-24,117(b) (Reissue 2016), that Arnold and Jon Freiden's appointments as copersonal representatives "shall terminate one year after the filing hereof." The schedule of distribution regarding Beverly Freiden's assets provided that "[c]ash and real estate" would be distributed to Jon Freiden. The parties agree that this reference to "real estate" was undoubtedly describing the real property at issue in this case. It is undisputed that there is no evidence of recording (such as a deed), and the will did not designate the real estate as an asset to be given wholly to Jon Freiden.

The appellant, Walz, had leased the real property from Beverly Freiden since at least 2012 and was interested in eventually buying the real property. The dispute before this court arises from an option-to-purchase provision originally included in a February 1, 2012, lease between Beverly Freiden and Walz. The lease/purchase agreement was for a period of tenancy to terminate on July 31, 2014. The 2012 option to purchase (2012 Option) provided as follows:

6. **OPTION TO PURCHASE**: The Tenant shall, simultaneously with the execution hereof, have an option to purchase the leased premises under the following terms and conditions:

a. The option price at the end of the lease term to be $20,000.00, which option price shall be available to the Tenant only if all of the lease payments as set forth

herein have been paid. The Tenant may exercise his option at any time before July 31, 2014, however, the option price shall then be $20,000.00, and in addition, an amount equal to the number of unpaid rental installments (as set forth above) multiplied by $250.00.

b. Tenant must exercise this option in writing at the address of the Landlord or her agent or representative at any time during the term of the lease as set forth herein.

c. Upon exercise of this option, the Tenant shall close on the purchase not later than August 15, 2014.

Walz did not exercise the 2012 Option during the original tenancy.

In July 2014, Walz presented Jon Freiden with a document titled "MODIFICATION TO LEASE/PURCHASE AGREEMENT" (2014 Agreement). Jon Freiden signed the document as a "[r]epresentative for Beverly Freiden" on August 4; Walz and Arnold did not sign the document. The 2014 Agreement stated that "both parties had entered into a prior agreement regarding the parking lot" and provided:

Both parties wish to make the following modifications to the original agreement.

1. . . . Walz is to be responsible for the payment of the real estate taxes for this property.

2. The balance owed as of August 1, 2014 for the purchase of this property is $15,000.

3. . . . Walz will continue to make montly payments in the amount of $250 each month due on the first of the month and late after the 15th of each month. If the payment is received late, a $25 late fee will be due and payable.

4. This agreement is for one year, ending on July 31, 2015. At the end of this agreement the balance of $12,000 will be paid off or this agreement will be renegotiated at that time.

5. Jon Freiden will provide to . . . Walz, legal documents showing that as son for Beverly Freiden, he has authority to sell this property on behalf of Beverly Freiden.

Walz did not exercise the option to purchase the real property by July 31, 2015. After the terms of the 2014 Agreement ended, Jon Freiden and Walz executed another "MODIFICATION TO LEASE/PURCHASE AGREEMENT" (2015 Agreement) on August 28, 2015. It stated, inter alia:

> 2. The balance owed as of August 1, 2015 for the purchase of this property is $11,750.

> 3. . . . Walz will continue to make monthly payments in the amount of $250 each month due on the first of the month and late after the 15th of each month. If the payment is received late, a $25 late fee will be due and payable.

> 4. This agreement is for one year, ending on July 31, 2016. At the end of this agreement the balance will be paid off or this agreement will automatically renew at the same terms and conditions as the previous year.

Based on the 2015 Agreement, Walz began to exercise control of the property and claims that he had purchased the property from Jon Freiden.

In January 2017, Arnold petitioned the county court for Douglas County to reopen the estate of Beverly Freiden, alleging that assets of the estate were not fully distributed and needed to be distributed. On January 24, that court reappointed Arnold as personal representative of the estate. Jon Freiden, whose appointment as personal representative had expired, was not involved in the second appointment. See § 30-24,117(b).

Arnold, as sole personal representative of the estate, filed a complaint in the district court for Douglas County seeking declaratory judgment and quiet title to the property. The complaint alleged that Walz had not timely exercised the 2012 Option, and it indicated that there was no enforceable modification. Walz filed an answer denying the allegations.

Arnold moved for summary judgment. Arnold claimed that the real property had never been distributed and remained in the estate, and Walz claimed that either he had purchased the property from Beverly Freiden according to a modified

option agreement or the property was distributed to Jon Freiden, who sold it to Walz.

The district court held a hearing on the motion for summary judgment and received evidence but agreed not to hear oral arguments until after the parties could review the evidence and submit briefs. The parties submitted briefs but did not provide notice of a hearing. The court took the matter under advisement. In its written order, filed December 6, 2018, the district court granted Arnold's motion for summary judgment and quieted title in favor of the estate. The court found that Walz had not exercised the 2012 Option, because he had not attempted to exercise it before July 31, 2014, and had not "'close[d] on the purchase not later than August 15, 2014,'" as required by the contract. The district court also found that the subsequent 2014 Agreement and 2015 Agreement were unenforceable with respect to the option to purchase, because the option had ended on its own terms and there was no longer a valid option to exercise by Walz as a holdover tenant.

On December 13, 2018, Walz filed a "Motion for New Hearing and/or Motion to Reconsider and Set Aside Order Granting Summary Judgment on December 6, 2018." Walz sought reconsideration of the summary judgment order, because the court had not held oral arguments on the motion and had made "[e]rrors in [l]aw . . . contrary to the [e]vidence." At the hearing on Walz' motion, in addition to identifying the aforementioned claimed procedural irregularities with the motion for summary judgment, Walz claimed that the court had failed to consider several of his arguments related to the validity of the 2014 Agreement and 2015 Agreement and attacked the judgment on the basis of errors of substantive law. The district court denied Walz' motion to reconsider, and Walz appeals.

ASSIGNMENTS OF ERROR

Walz assigns, summarized and restated, that the district court erred when it found there were no disputed material facts,

concluded that the property remained in the estate, granted summary judgment in favor of Arnold, and quieted title in the estate.

## STANDARDS OF REVIEW

[1] A question of jurisdiction is a question of law. *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017).

[2,3] Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Meyer Natural Foods v. Greater Omaha Packing Co.*, 302 Neb. 509, 925 N.W.2d 39 (2019). An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

[4,5] A quiet title action sounds in equity. *Adair Holdings v. Johnson*, 304 Neb. 720, 936 N.W.2d 517 (2020). On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

*Walz' Notice of Appeal Was Timely.*

Arnold claims that Walz' postjudgment motion did not terminate the 30-day period during which a party may file a notice of appeal. See Neb. Rev. Stat. § 25-1912 (Cum. Supp.

2018). Therefore, we initially address Arnold's contention that Walz failed to timely appeal the district court's May 30, 2019, dispositive order.

[6,7] Under § 25-1912, to vest an appellate court with jurisdiction, a party must timely file a notice of appeal. *Clarke v. First Nat. Bank of Omaha, supra*. A party must file a notice of appeal within 30 days of the judgment, decree, or final order from which the party is appealing. *Id*. However, filing a timely motion for a new trial or a timely motion to alter or amend a judgment terminates the time in which a notice of appeal must be filed. *Id*. Instead, the 30-day period to appeal starts anew upon the entry of the order ruling upon the motion for a new trial or the motion to alter or amend a judgment. *Id*.

[8,9] In some circumstances, an appellate court may treat a postjudgment motion under a different title as a motion to alter or amend a judgment, based on the actual relief it seeks, rather than the way it was titled by the movant. See, *id*.; *State v. Bellamy*, 264 Neb. 784, 652 N.W.2d 86 (2002). A motion to reconsider may be treated as a motion to alter or amend under Neb. Rev. Stat. § 25-1329 (Reissue 2016) if it was filed no later than 10 days after the entry of judgment, and must seek substantive alteration of the judgment. See, *Clarke v. First Nat. Bank of Omaha, supra*; *State v. Bellamy, supra*.

Arnold asserts that we should not treat Walz' "Motion to Reconsider and Set Aside Order Granting Summary Judgment" as a motion to alter or amend, because it sought relief based on procedural irregularities in the summary judgment hearing and did not request a substantive alteration of the judgment. We disagree.

The motion on its face as well as the transcripts of the hearing on Walz' postjudgment motion show that Walz sought relief based on both procedural and substantive reasons. Walz asserted several errors of law, including a claim that the district court had failed to consider when a personal representative was barred from seeking a "clawback" of real property. We consider Walz' motion to be a motion to alter

or amend, and accordingly, Walz' notice of appeal was timely filed following consideration of his postjudgment motion. See §§ 25-1329 and 25-1912. See, also, *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017).

*Walz Did Not Exercise the Option in Lease.*

We begin by examining Walz' claim to the property based on the 2012 Option. The trial court found that Arnold's evidence showed that the option was not executed. Walz did not refute this finding, and we therefore agree with the ruling by the trial court.

[10-12] An option to purchase real estate is a unilateral contract by which the owner of the property agrees with the holder of the option that he or she has the right to buy the property according to the terms and conditions of the option. *Walters v. Sporer*, 298 Neb. 536, 905 N.W.2d 70 (2017). By such an agreement, the owner does not sell the land; nor does the owner at the time contract to sell. *Id*. The owner does, however, agree that the person to whom the option is given shall have the right, at his or her election or option, to demand the conveyance in the manner specified. *Id*. An option compels performance within the time limit specified or, if none is mentioned, then within a reasonable time. *Id*.

[13-15] Options should be strictly construed and not extended beyond their express provisions. *State Securities Co. v. Daringer*, 206 Neb. 427, 293 N.W.2d 102 (1980); *Wright v. Barclay*, 151 Neb. 94, 36 N.W.2d 645 (1949). The exercise of an option to buy or sell real estate must be absolute, unambiguous, without condition or reservation, and in accordance with the offer made. *State Securities Co. v. Daringer, supra*; *Master Laboratories, Inc. v. Chesnut*, 154 Neb. 749, 49 N.W.2d 693 (1951). Where the contract specifies the required manner of acceptance, the holder must conform. *Gleeson v. Frahm*, 211 Neb. 677, 320 N.W.2d 95 (1982).

Among its other requirements to exercise the right to purchase the property, the 2012 Option was timebound and provided, "The Tenant may exercise his option at any time before

July 31, 2014 . . . ." Here, the district court found that Walz'
actions were insufficient to exercise the option prior to the
expiration of this term. Walz' evidence did not refute this
finding. Therefore, the option expired under the terms of the
original lease/purchase agreement, strictly construed. It appears
from the record that Walz continued his tenancy and proceeded
as though the option had not been extinguished. However, after
July 31, 2014, Walz became a holdover tenant and his tenancy
rights no longer included the right to elect or opt to buy the
leased real property according to the terms of the 2012 Option.
See *Wright v. Barclay, supra*. Because the option contained in
the lease is not one of the terms of the tenancy itself, Nebraska
law does not recognize that an option would be incorporated
into a subsequent lease of a holdover tenant. See *id.* In this
case, the original lease/purchase agreement and 2012 Option
did not contain any provision for renewal of the lease or of the
option, which might alter these general rules.

With respect to the effect of the 2014 Agreement and
2015 Agreement, which purportedly modified the 2012
lease/purchase agreement to empower Walz to treat his rent
payments as installment payments to buy the real property,
these contracts, if analyzed on their face, do not provide
continuity with the original lease/purchase agreement and
did not revive the original but extinguished option to buy the
property. Although they are framed as a contract modifica-
tion, they cannot modify a terminated contract. The district
court did not err when it found that the effect of the 2014
Agreement and 2015 Agreement was "moot" with regard to
the 2012 Option, because there was no longer a valid option
to exercise or modify.

Walz suggests that the effect of the 2014 Agreement and
2015 Agreement was to retroactively apply Walz' rent pay-
ments to a "balance owed" on the property. Contrary to Walz'
suggestion, the terms of the modifications regarding a balance
owed are more in the nature of a land contract or install-
ment contract and not consistent with the original lease/pur-
chase agreement, which had provided for a purchase price of

$20,000. The 2012 Option did not suggest an intent that the original option should continue after July 31, 2014, in such a manner, and the 2014 Agreement and 2015 Agreement did not expressly create a new option to buy the property. It is well settled that "[t]he terms of an option should be precisely regarded and enforced without addition or alteration." *Master Laboratories, Inc. v. Chesnut*, 154 Neb. at 752, 49 N.W.2d at 696. The 2012 Option was limited in express terms and duration and could not be exercised or modified beyond its expiration. The district court did not err when it concluded that by application of the law to the unrefuted evidence, Walz had not exercised a valid option.

*The District Court Did Not Err When
It Quieted Title in the Estate.*

Walz next claims that the district court erred when it quieted title to the real property in the estate. Walz contends that the property was distributed to Jon Freiden at the conclusion of the original informal probate and that Jon Freiden later sold the property to him. We reject this claim of error.

A deed of real estate, signed by the grantor, lawfully acknowledged, and recorded as directed by statute, is generally required to transfer title to real estate. Neb. Rev. Stat. § 76-211 (Reissue 2018). But real property may be distributed in kind in accordance with the will; the absence of a recorded deed does not invalidate the instruments in the probate proceedings between the parties. See Neb. Rev. Stat. §§ 30-24,104 (Reissue 2016) and 76-238(1) (Reissue 2018). Section 30-24,104(a) provides, in relevant part, that "[u]nless a contrary intention is indicated by the will, the distributable assets of a decedent's estate shall be distributed in kind to the extent possible . . . ."

Had the will of Beverly Freiden designated the real property to Jon Freiden without caveat, the property would have devolved upon her death without a deed. However, the will demonstrates a contrary intention. Beverly Freiden directed that the property

may either be sold or retained by my personal represen-
tatives as they shall determine, and upon sale, whenever
it occurs, my son, Jon Freiden, shall receive the first
$25,000.00 from the sale and the remainder of the net
sale proceeds shall be paid over to my grandson, Bart
Arnold for his care.

The real property remained in the estate, and Jon Freiden
was entitled to only the first $25,000 of the proceeds upon a
sale of the real property. Pursuant to the will, the real prop-
erty was not required to be distributed in kind to Jon Freiden
because it was also meant to support Bart Arnold to the extent
there would be additional sale proceeds.

Although the distribution sheet mentions that Jon Freiden
was to receive real property from the estate, there is no evi-
dence, such as the personal representative's deed, demonstrat-
ing that a conveyance from the estate to Jon Freiden took
place. To the contrary, the evidence included a continuity of
registered ownership with no reference to Jon Freiden. In light
of the intent of the will, the distribution sheet was not a con-
veyance of the property to Jon Freiden. Because Jon Freiden
did not own the real property, he did not possess the authority
to unilaterally convey the property to Walz. There is no genu-
ine issue of material fact with respect to the fact that the real
property remained in the estate. The district court did not err
when it quieted title in the estate.

## CONCLUSION

Walz, a tenant of the real property of the decedent, Beverly
Freiden, did not exercise the option associated with the lease,
and subsequent purported options were not valid or enforceable.
The real property remained in the estate. Accordingly, we
affirm the order of the district court that granted Arnold's
motion for summary judgment and quieted title in the estate.

AFFIRMED.