Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/30/2021 08:08 AM CDT

Lynden A. Smith et al., appellants, v. Leonard
M. Smith et al., defendants and third-party
plaintiffs, appellees, and Alisa Smith,
third-party defendant, appellant.

___ N.W.2d ___

Filed March 16, 2021.    No. A-20-233.

1. **Partition: Equity.** A partition action is an action in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Partition.** The object of a partition suit is to assign property, the fee simple title to which is held by two or more persons as joint tenants, or tenants in common, to them in severalty.
4. ____. There are two types of partition: partition in kind, where the property is physically divided, and partition by sale, where the property is sold and the sale proceeds are divided.
5. ____. As between a partition in kind or sale of land for division, the courts will favor a partition in kind, since this does not disturb the existing form of inheritance or compel a person to sell his or her property against his or her will, which, it has been said, should not be done except in cases of imperious necessity.
6. **Partition: Jurisdiction.** A court acquiring jurisdiction of property for partition acquires complete jurisdiction of the property and affords complete justice to all parties in that action with respect to the subject matter.
7. **Partition: Equity.** Pursuant to its equity powers, a court can order a partition in kind such that co-owned property is divided between two

groups of owners, rather than divided among all owners individually. However, such a remedy should be rarely utilized and only when it is equitably necessary.

8. **Partition.** The statutory ground for a sale of co-owned land is a showing that partition in kind cannot be made without great prejudice to the parties.

9. \_\_\_\_. The generally accepted test of whether a partition in kind would result in great prejudice to the owners is whether the value of the share of each in case of a partition would be materially less than the share of the money equivalent that could probably be obtained for the whole.

Appeal from the District Court for Sheridan County: Travis P. O'Gorman, Judge. Affirmed.

Sean A. Minahan, of Lamson, Dugan & Murray, L.L.P., for appellants.

Terry Curtiss, of Curtiss, Moravek & Curtiss, P.C., L.L.O., for appellees.

Pirtle, Chief Judge, and Moore and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

In this appeal from proceedings to partition real estate, the principal issue is whether partition in kind can be achieved by awarding a portion of the property collectively to one group of owners and awarding the remaining property collectively to another group of owners. Ultimately, we conclude that because the law has long favored partition in kind and because the unique facts and circumstances presented by this case warranted a unique resolution, it was appropriate to partition the property collectively between the two groups of owners. We affirm the judgment of the district court.

## BACKGROUND

Leonard M. Smith and Linda S. Smith and their four children, Lynden A. Smith, Jaclyn K. Smith, Sarah K. Kah (Sarah), and Lucas A. Smith, are co-owners of 4,972 acres of land located in Sheridan County, Nebraska, which they inherited

from Linda's parents. The shared land is made up of three noncontiguous parcels. The first parcel of land is referred to in the record as the "[N]orth [P]ivot." A second parcel of land just to the south of the North Pivot is referred to as both "Unit 62" and the "Mirage Flats Irrigation District." Unit 62 includes 87.2 acres of land. The North Pivot and Unit 62 parcels consist of irrigated farmland and grassland. In particular, Unit 62 was described as "very flat, very fertile ground." The parties stipulated that Linda owns 46 percent of the land contained within the North Pivot and Unit 62, while each of her four children own 13.5 percent of these parcels. The third parcel of land is referred to as the "[R]anch." This parcel consists largely of pastureland, but also includes irrigated and nonirrigated cropland as well. The parcel includes various improvements, including multiple houses, sheds to store machinery and house cattle, and a large Quonset. Box Butte Creek flows through a portion of the Ranch. The parties stipulated that Leonard and Linda own 32.5 percent of the Ranch as tenants in common. The rest of that parcel is divided equally among Linda and her four children such that each owns a 13.5-percent interest in the land.

In September 2017, Lynden, Jaclyn, and Sarah filed a shared complaint for partition of the co-owned land, seeking that title "be quieted and confirmed in its owners; that [the property] be partitioned and divided among its owners in kind . . . and if the [property] cannot be divided and partitioned in kind, then that it be sold as provided by law and the net proceeds therefrom divided accordingly." Leonard, Linda, and Lucas (collectively referred to as "appellees") filed a shared answer and cross-claim against Lynden, Jaclyn, Sarah, and a third-party defendant, Alisa Smith, who is Lynden's wife (collectively referred to as "appellants"), conceding that partition of the co-owned land was necessary and appropriate. Appellees also affirmatively indicated, "The property in question cannot fairly be divided in kind as part of this proceeding given the property's unique character, its pivot irrigation on portions, and the varying improvements to portions of the tract." Appellees

requested that a referee be appointed "to determine that the said real estate may not be divided in kind" and that the property be sold and the funds obtained from the sale be divided amongst the parties.

Pursuant to the parties' stipulation regarding ownership of the property, the district court determined that appellants and appellees were all joint owners of the property. The court appointed a referee to recommend whether the property could be partitioned in kind without great prejudice to the owners or whether the property should be sold and the proceeds divided.

The referee inspected the property. He opined:

> The partition thereof in kind cannot be made without great prejudice to the owners when considering terrain, availability of surface water, livestock watering facilities, improvements located thereon and associated with certain parts of the real estate subject to partition and methods and means of application of surface and underground water to certain irrigable tracts.

The referee filed a motion with the district court to approve his report and to order a sale of the property.

Appellees subsequently filed an objection to the referee's report. In their objection, appellees indicated that they did not believe a sale of the property was necessary or appropriate. They alleged, "Sale of all real estate will work a serious and unique hardship on [appellees] given their investment in the co-owned real estate and its use and location as it relates to other property of [Leonard and Linda]." Appellees proposed that the land should be partitioned in kind such that appellants would collectively receive a portion of the property equal to their collective shares. Similarly, appellees would collectively retain the remainder of the property. Appellees contended, "Sale of all the co-owned real estate and division of the net proceeds from the sale will not realize a materially greater payment to [appellants] then [sic] division in kind as hereafter proposed and sale by [appellants] of the share distributed 'in kind' to them."

In conjunction with their objection to the referee's report, appellees filed a motion for leave to amend their cross-complaint in order to delete the assertion that the property could not be divided in kind. Appellees indicated that such assertion was included in the cross-complaint only "due to the error of their attorney." The district court ultimately granted the motion for leave to amend. The court also scheduled a trial on the referee's report and appellees' objection to that report.

During the trial, Leonard, Linda, Lucas, Jaclyn, and Lynden each testified. In addition, both appellants and appellees called an expert witness to testify regarding the feasibility of partitioning the co-owned land in kind without great prejudice to the owners.

Leonard generally testified regarding his use of the co-owned land as a part of his combined ranching and farming operation. Linda and Lucas are also involved in this operation. Leonard indicated that if all of the co-owned land were to be sold, it would "cripple" the operation. In addition, Leonard explained that he and Linda own separate parcels of land which border portions of the co-owned land. Selling the co-owned land would affect their access to their independently owned land. Leonard further explained that he did not want to sell all of the co-owned land

> [b]ecause we feel that it would adversely affect me and my son and especially my wife. This is her home. She was raised there. She's the happiest when she goes down there and checks the cattle out in the pasture. That's why we object to it and we feel that each person should get their fair share and operate it to whatever potential they feel right.

Leonard proposed that the three parcels of land which are co-owned by appellants and appellees be partitioned in kind such that appellants receive all of Unit 62 and a portion of the west side of the Ranch, including sections 4 and 9 and the westernmost part of section 15 (480 acres). Appellants would also receive a small corner of section 10 (40 acres),

located within the Ranch, so that they would have ready access to section 15 from section 9. In total, appellants would receive approximately 1,880 of the total 4,972 co-owned acres. While 1,880 acres is not equal to appellants' collective 40.5 percent interest in the total number of acres making up the co-owned land, Leonard testified that his proposal provided appellants with their collective share of the value of the co-owned land.

As a part of Leonard's proposed division of the co-owned land, he, Linda, and Lucas would collectively receive the North Pivot and the remainder of the Ranch, totaling approximately 3,092 acres. Leonard testified that he believed that dividing the co-owned land this way was fair: "I believe this is as fair [a] division as you could [accomplish]. They are getting the better end of the [R]anch."

Specifically, Leonard explained that this division of the property would provide Lynden with Unit 62, which is where he has farmed since 2003 or 2004. Leonard noted that Lynden has made improvements to Unit 62, including putting "drip tape" underneath the ground to irrigate his crops. Appellants would also receive the larger of two pivots located on the Ranch and a majority of the dryland cropland. Appellants would have access to water from two windmills located on their portion of the Ranch. In addition, the creek located within their parcel would provide "live water" even in years of drought. However, Leonard did indicate that, in the past, the creek has flooded, making travel between sections 9 and 15 impossible until the water receded. Leonard explained that appellants would have ready access to all parts of their portion of the Ranch, as a highway runs through section 4 and another road lies directly south of section 15, the southernmost section of appellants' allocated property. Leonard did not believe appellants would have any issue with accessing section 15 from that road. He did indicate that without the road, the only access appellants would have to section 15 would be to cross the creek.

Linda and Lucas also testified about the road directly south of section 15. Linda indicated that she has utilized that road, without permission or interference from anyone, since she was a child. Similarly, Lucas testified that he has used the road without permission or interference from anyone since at least 1993. In addition, Lucas believed the road to be public, as he had observed county employees doing maintenance work, including "blading the road" to make it smoother and fill holes as recently as the summer of 2018. Linda testified that in addition to using the road, appellants could also obtain access to section 15 using their portion of section 10. Linda recognized that the creek sometimes may affect appellants' ability to cross into section 15; however, she indicated that this issue could "be easily addressed."

Appellees called John Childears to testify as their expert witness. Childears has been a licensed real estate appraiser and a licensed real estate broker in Nebraska for approximately 40 years. He is also an accredited rural appraiser. Childears testified that he has previously completed 779 appraisals, including 75 appraisals of large feedlots.

Childears performed an appraisal of the co-owned land. Utilizing the cost approach, he calculated the total value of the land to be $5,751,000. In reaching this conclusion, Childears calculated a value for each of the three separate parcels which make up the co-owned land. The North Pivot was valued at $427,000. Unit 62 was valued at $261,000. The portion of the Ranch that is west of the county road was valued at $1,563,000. The remainder of the Ranch was valued at $3,500,000.

Childears opined that the co-owned land could be fairly partitioned in kind between appellees collectively and appellants collectively. Childears' proposed division of the land largely mirrored Leonard's proposed division. Appellants would receive Unit 62 and the western portion of the Ranch. However, Childears proposed that appellants would receive all of section 15 of the Ranch, rather than the western portion of that section as proposed by Leonard. Appellees would

receive the North Pivot and the remaining portion of the Ranch. According to Childears' calculations, by dividing the co-owned land in this manner, appellants would receive 41.17 percent of the total value of the land, which is more than their collective share of 40.5 percent.

Childears testified to his belief that the creek located on a part of appellants' portion of the Ranch was "a positive" even if it might sometimes cause access issues. He believed that the land granted to appellants was saleable. In fact, he opined that appellants' portion of the Ranch was "very marketable, very desirable." Childears testified that on the open market, there would be a number of potential buyers for appellants' land.

At the close of appellees' case, appellants motioned for a directed verdict, asking the district court to adopt the referee's report which recommended sale of the co-owned land. The court overruled the motion.

Jaclyn testified on behalf of appellants. She indicated that at the time of her testimony, she had lived in a house located in section 9 of the Ranch, one of the sections that would be granted to appellants pursuant to Childears' proposal, for the past 2 years. Jaclyn testified that she was not in favor of partitioning the land pursuant to Childears' proposal. She did not want to be "legally bound" to any of her family members by collectively owning the land. She was also concerned that if the court awarded her, Lynden, and Sarah a collective share of the land, that another partition action would have to be initiated. Jaclyn indicated that she did not believe there was a fair way to partition the land in kind. She was in favor of selling all of the land and dividing the proceeds.

Lynden testified that at the time of the trial, he farmed land located within Unit 62 and within section 9 of the Ranch, both parcels that would be granted to appellants pursuant to Childears' proposal. In the past, Lynden has also lived on section 9. Lynden did not agree with Childears' proposal to divide the land collectively between appellants and appellees. He expressed concern that there was no southern access to

appellants' portion of the Ranch because the road was private and owned by a neighboring farmer. Lynden also did not want to own land with his sisters because he believed Jaclyn and Sarah would want to sell the land, which would "[i]mmensely" affect his farming operations. Lynden testified, "I never really wanted to sell the property. I want to keep it. I want to farm. That's why I'm there." However, Lynden also conceded that he had not objected to the referee's report which had recommended sale of all the co-owned land.

Appellants called Ryon Rypkema to testify as their expert witness. Rypkema has been a licensed real estate appraiser in South Dakota and North Dakota since 2004. He has also obtained temporary licenses to work on specific projects in Nebraska. He specializes in appraising agricultural and commercial properties. However, he is not accredited as a rural appraiser.

Rypkema performed an appraisal on the co-owned land using the cost approach and the sales comparison approach. Rypkema explained that his "final appraisal" utilized "a blend of the cost approach and the sales comparison approach." He opined that the total value of the co-owned land was $5,410,000. He believed that it would be "difficult" to divide the land equitably between the six owners, given the numerous different types of land and improvements. Rypkema indicated he did not have any real issues with Childears' appraisal; however, he did not believe that Childears' proposed division of the property would be equitable. In fact, using Rypkema's calculations, Childears' proposed division would yield appellants only 35.75 percent of the total value of the co-owned land, which was less than their 40.5-percent interest in the land. Rypkema also questioned whether appellants would have "legal access" to section 15 of the Ranch from the road located just to the south of that section.

During their rebuttal, appellees recalled Childears to testify. Childears questioned the reliability of Rypkema's appraisal due to his apparent use of "assemblage." Childears described assemblage as adding up the various parts of a property to

calculate the total value. Childears testified that assemblage is not a viable tool in appraising real property. Childears also questioned Rypkema's valuation of each individual parcel "regardless of fencing, regardless of access, regardless of water sites, so forth."

On January 21, 2020, the district court entered an order sustaining appellees' objection to the referee's report and ordering an in-kind division of the property such that appellants collectively received 41.17 percent of the total value of the property, in accordance with Childears' testimony at trial. In the order, the court specifically found Childears to be "very credible" and believed that while "[p]artition in kind under the facts of this case is difficult . . . an equitable division in kind is not impossible." The court indicated that "Childears' opinion as to value and proposed division shows that the property [appellees] suggested be allocated to [appellants] was not materially less than the share of the proceeds they would receive in the event that the entire property is ordered to be sold." The court indicated its belief that a forced sale of all the land would not advance the interests of appellees or of Lynden. The court also specifically found that Rypkema was not a credible witness. The court noted that it "gave little weight to Rypkema's opinions."

Appellants filed a timely appeal from the district court's order partitioning the co-owned property in kind.

## ASSIGNMENTS OF ERROR

Appellants assign, restated and consolidated, that the district court erred in partitioning the property in kind to appellants collectively and to appellees collectively and in finding that any partition in kind was possible given the character and location of the property.

## STANDARD OF REVIEW

[1,2] A partition action is an action in equity. *FTR Farms v. Rist Farm*, 305 Neb. 708, 942 N.W.2d 204 (2020). On appeal from an equity action, an appellate court tries factual

questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Arnold v. Walz*, 306 Neb. 179, 944 N.W.2d 747 (2020).

## ANALYSIS

[3] Before we address the specific assertions raised by appellants in this appeal, we must restate the basic, longstanding concepts which govern partition actions in Nebraska. The object of a partition suit is to assign property, the fee simple title to which is held by two or more persons as joint tenants, or tenants in common, to them in severalty. *FTR Farms v. Rist Farm, supra*. "Severalty" is defined as the "quality, state, or condition of being separate or distinct." Black's Law Dictionary 1583 (10th ed. 2014). Essentially, the purpose of partition is to provide owners with separate and exclusive possession of their portion of co-owned land.

[4,5] There are two types of partition: partition in kind, where the property is physically divided, and partition by sale, where the property is sold and the sale proceeds are divided. *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012). As between a partition in kind or sale of land for division, the courts will favor a partition in kind, since this does not disturb the existing form of inheritance or compel a person to sell his or her property against his or her will, which, it has been said, should not be done except in cases of imperious necessity. *FTR Farms v. Rist Farm, supra*. A sale in partition cannot be decreed merely to advance the interests of one of the owners, but before ordering a sale, the court must judicially ascertain that the interests of all will be promoted. *Id*. In fact, it is generally held that until the contrary is made to appear, the presumption prevails that partition in kind is feasible and should be made, and that the burden is on those who seek a

sale of the property in lieu of partition in kind to show the existence of a statutory ground for such sale. *In re Estate of McKillip, supra*. With these principles in mind, we turn to the specific arguments here.

On appeal, appellants challenge the district court's authority to order partition in kind such that co-owned land is divided collectively between two groups of owners. Appellants contend that partition in kind can only be achieved by awarding each owner his or her individual share of the land: "[T]he right to partition runs to each Appellant independently, rather than as a collective." Brief for appellants at 15.

[6,7] The Nebraska Supreme Court recently restated a long-standing proposition of law that in Nebraska, a court acquiring jurisdiction of property for partition acquires complete jurisdiction of the property and affords complete justice to all parties in that action with respect to the subject matter. *FTR Farms v. Rist Farm*, 305 Neb. 708, 942 N.W.2d 204 (2020). This statement is properly in line with the trial court's broad equitable powers, including the power to devise a remedy to meet the situation presented. See, e.g., *O'Connor v. Kearny Junction*, 295 Neb. 981, 893 N.W.2d 684 (2017). In *FTR Farms v. Rist Farm*, the Supreme Court discussed these broad equitable powers when holding that the concept of owelty, an equalization payment, is permitted in certain partition cases when it is determined to be "equitably necessary." 305 Neb. at 720, 942 N.W.2d at 214. Similarly, we hold that pursuant to its equity powers, a court can order a partition in kind such that co-owned property is divided between two groups of owners, rather than divided among all owners individually. However, as the Supreme Court cautioned regarding the concept of owelty, such a remedy should be "rarely utilized and only when it is equitably necessary." *Id*.

We find the circumstance presented by this case to be one of the rare situations which warrants a partition in kind such that the co-owned land is divided collectively between appellants and appellees. First, as we explained above, appellants

filed their complaint for partition as a collective unit and continued to act as a unit throughout the proceedings in the lower court. They shared the same lawyer and acted in concert in questioning each witness. None of appellants formally objected to the referee's report recommending a sale of all of the property, although Lynden did testify that he wished to keep his farmland. Moreover, appellants continued to act as a unit in filing and in briefing this appeal. Because appellants have clearly aligned their interests and have, at least implicitly, indicated a collective desire to partition by sale, this case presents a different factual scenario than one where each co-owner of land proceeds as an individual.

Next, we find that the evidence presented at trial revealed that a partition by sale would create a significant hardship for appellees, especially because Leonard and Linda own land which borders the co-owned property and because their ranching and farming operation has been in place on the property for decades. As we stated above, a person should not be forced to sell land against his or her will. See *FTR Farms v. Rist Farm, supra*. And, under the circumstances of this case, a sale of all of the property would not promote the interests of all of the co-owners.

Appellees, through the expert opinion of Childears, presented the district court with an effective remedy which, for all intents and purposes, gave both appellees and appellants exactly what they requested. By dividing the land in kind collectively between the two groups, the district court awarded appellees sufficient land to keep their operation running, while giving appellants more than their fair share of the value of the land to sell. Childears testified that the land allotted to appellants was very marketable and represented 41.17 percent of the total value of the land. The district court found Childears' opinion as to value to be very credible.

While appellants assert that what they actually sought from their partition action were their individual portions of 13.5 percent of the total value of the land, they do not explain

how the district court's decision to partition the land in kind provided them with something different than what they sought. They can sell the land awarded to them and, according to Childears, obtain more than their 13.5-percent individual share of the total value of the land. Furthermore, while appellants assert that they have suffered great prejudice by being forced to co-own land with two of their siblings, they fail to provide much detail regarding this prejudice. Appellants are free to sell the land provided to them by virtue of the court's decision and receive their share of the proceeds. This is precisely what they sought in their partition action and at trial.

Appellants also point to the Supreme Court's opinion in *Zornes v. Zornes*, 292 Neb. 271, 872 N.W.2d 571 (2015), to demonstrate that the district court's collective partition in kind was not appropriate. However, we find *Zornes v. Zornes* to be distinguishable. In that case, the district court partitioned two promissory notes between the two parties by awarding each party a one-half divided interest in the proceeds from each note. On appeal, the Supreme Court reversed the district court's decision. The court indicated that the lower court's partition had "actually preserved joint management" of the notes, rather than separating or dividing the parties' interests in the notes. *Id.* at 279, 872 N.W.2d at 578. However, the court also noted the difficult position the district court was in when attempting to equitably divide the promissory notes, as each promissory note held a different value. The Supreme Court ultimately ordered the district court to partition the promissory notes such that each party received one note, but that the party who received the lower value also received an equalization payment.

While in *Zornes v. Zornes, supra*, the Supreme Court reversed the district court's decision to partition the promissory notes in a manner which essentially left the two parties in the position of continuing as joint owners, in this case, the district court partitioned the land between the two groups of owners in order to give each group exactly what it asked

for. Appellants, who were in favor of selling all of the land, received more than their fair share of the value of that land so that they could sell it and divide the proceeds. While the district court's order had the effect of necessitating the three appellants to continue as joint owners, at least temporarily, such an order is distinct from that in *Zornes v. Zornes, supra*. Here, appellants did not act as opposing parties in the partition action. Rather, they acted in concert with each other throughout the proceedings. Appellants decided to align their interests by not objecting to the referee's report and advocating for the sale of the property. The district court's order permits appellants to obtain their individual interests in the total property. Moreover, we note that in *Zornes v. Zornes*, the Supreme Court indicated its understanding that partition actions sometimes require unique resolutions. We note that the district court could have ordered that only the land awarded to appellants be sold. See Neb. Rev. Stat. § 25-21,103 (Reissue 2016). However, given the unity of appellants' position, the court chose not to do so. We find no error in the court's choice.

Appellants also assert in their brief on appeal that even if the co-owned land could be partitioned in kind collectively between two groups of owners, that under the facts of this case, it was not equitable to do so. Specifically, appellants argue that the evidence revealed that because there was limited access to section 15 of the Ranch, which was granted to them, that the value of that section was greatly diminished. Essentially, appellants argue that the partition in kind did not yield their full share of the total value of the co-owned land and that the co-owned land should have been sold in its entirety.

[8,9] The statutory ground for a sale of co-owned land is a showing that partition in kind cannot be made without great prejudice to the parties. See Neb. Rev. Stat. §§ 25-2181 and 25-2183 (Reissue 2016). While it is generally true that there is a presumption in favor of partition in kind, it is likewise true that the character and location of the property, or the amount of the interest sought to be assigned, or both, may be such

that it will be presumed that partition in kind cannot be made. *Nordhausen v. Christner*, 215 Neb. 367, 338 N.W.2d 754 (1983). The generally accepted test of whether a partition in kind would result in great prejudice to the owners is whether the value of the share of each in case of a partition would be materially less than the share of the money equivalent that could probably be obtained for the whole. *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012).

Here, appellants argue that the partition in kind ordered by the district court results in great prejudice to them because it does not provide them with the value of their share of the total property. In support of their argument, appellants point to evidence presented at trial which casts doubt on whether section 15 of the Ranch was independently accessible and was, thus, marketable. While we recognize that appellants offered evidence in an effort to demonstrate potential difficulties with accessing section 15, including Lynden's testimony that the road to the south of that section was privately owned by a neighboring farmer and evidence that due to flooding in the creek, section 15 could not always be accessed from section 9, we also recognize the contradictory evidence presented by appellees. Leonard, Linda, and Lucas each testified that they have never had any problems with accessing section 15 using the road to the south of that section. Lucas also testified that he believed the road was publicly owned because he had previously observed county workers maintaining the road. In addition, both Leonard and Linda testified that while the creek sometimes flooded, causing section 15 to be temporarily inaccessible from section 9, this issue could be easily addressed and rectified. Childears also testified that, in his opinion, the creek increased the value of appellants' portion of the co-owned land by providing a consistent water source. Childears opined that the land awarded to appellants was very marketable.

As we stated above, where credible evidence is in conflict on a material issue of fact, the appellate court considers and

may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Arnold v. Walz*, 306 Neb. 179, 944 N.W.2d 747 (2020). The parties presented conflicting evidence regarding the accessibility, and the corresponding marketability, of section 15. After hearing testimony from all of the witnesses, the district court apparently found appellees' testimony regarding access to be more credible. In fact, the district court explicitly found Childears' testimony to be very credible. We do not reevaluate the lower court's credibility determinations here.

Given that the district court found appellees' evidence regarding the accessibility to section 15 to be credible, we do not find the court's partition in kind to be inequitable. Childears testified that by dividing the co-owned land such that appellants received Unit 62; all of sections 4, 9, and 15 of the Ranch; and 40 acres of section 10 of the Ranch, appellants would be receiving 41.17 percent of the total value of the co-owned land. This is more than appellants' collective 40.5 percent interest in the land. Appellants have not offered any other argument, outside of the accessibility of section 15, to support their assertion that they suffered great prejudice due to the division in kind. Accordingly, we affirm the district court's decision to partition the land in kind, rather than to order the sale of all the land.

## CONCLUSION

Given the broad equity powers granted to the district court in partition actions and the favor given to partition in kind, we affirm the decision of the district court to partition the co-owned land by awarding a portion of the land collectively to appellants and by awarding the remaining portion of the land collectively to appellees. Appellants were awarded more than their share of the total value of the land.

Affirmed.